Green *vs.* Akers.

---

ANNA F. GREEN, executrix, plaintiff in error, *vs.* C. F. AKERS, defendant in error.

1. Where the intention and object of parties in entering into a contract became material in a judicial investigation, it is incompetent for a witness to

testify as to the intention of the agreement. He may state what the contract was and the consideration therefor.

2. A mortgagee, in consideration that no further obstacle should be interposed to the enforcement of his lien, agreed to allow fifty acres of the land covered thereby to the son and attorney of the mortgagor. This tract was subsequently sold under execution, and the proceeds claimed both by the mortgagee and said son of the mortgagor.

*Held*, that upon the trial of the issue thus formed, it was competent for the mortgagee to show that the mortgagor had not complied with his agreement, but had renewed the litigation, thus defeating him in the collection of his claim.

Contracts. Evidence. Before Judge BUCHANAN. Troup Superior Court. May Term, 1874.

Reported in the decision.

SPEER & SPEER, for plaintiff in error.

No appearance for defendant.

WARNER, Chief Justice.

This case came before the court below on an issue formed between C. F. Akers and Fisk, as to who was entitled to the money in the sheriff's hand, arising from the sale of fifty acres of land, as the proprty of Samuel Akers. On the trial of the issue, the jury, under the charge of the court, found a verdict in favor of C. F. Akers. The case is brought here on a bill of exceptions, alleging error in the charge of the court to the jury, and to the admission and rejection of evidence offered at the trial.

It appears from the evidence in the record, that on the 5th of May, 1866, Samuel Akers executed a mortgage to F. M. Fisk on certain described lands, including the fifty acres, from the sale of which the money in controversy was raised, to secure the payment of certain promissory notes therein described. Pending the rule *nisi* for the foreclosure of the mortgage which was resisted by Samuel Akers, the defendant therein, he proposed through his attorneys in writing, to the attorneys of the plaintiff, for the purpose of settling all the litigation

then pending between them, on the following terms, to-wit: "to allow Fisk to take a rule alsolute upon the mortgage made to him by Samuel Akers, allowing to Frank Akers (meaning the said C. F. Akers) fifty acres of land situated in the vicinity of LaGrange, Georgia, and that said Akers, (meaning Samuel Akers) will dismiss his action for words against F. G. Fisk, and the damage suit upon attachment against F. M. Fisk." This proposition in writing, was agreed to and signed by the attorneys of both parties on the 18th of November, 1868, C. F. Akers being one of them.   C. F. Akers was allowed to testify over the objection of 'Fisk's attorneys, "that part of the consideration of the fifty acres of land in the foregoing agreement, was the giving up by him to F. M. Fisk's attorneys a $400 00 draft given by Fisk to his father on P. Pease, and that the intention of the agreement, was to allow him the use of the mortgage, or to assign him the lien of the mortgage on the fifty acres of land." To the admission of this testimony, the counsel for Fisk excepted.

Fisk then offered to prove that although Samuel Akers had dismissed his suits at the November term, 1868, that soon after the adjournment of the court, he renewed the litigation by claiming the land when levied on by the mortgage *fi. fa.*, had obtained a homestead on it, and had sold the homestead to third parties. The testimony thus offered was ruled out by the court, and Fisk, by his counsel, excepted.

Fisk then offered to prove by the testimony of J. & D. N. Speer, two of the attorneys who signed the written proposal for settlement of the 18th of November, 1868, that it was the intention of the parties to that agreement that Fisk should be allowed to proceed to collect his money with the mortgage *fi. fa.* without any further litigation from Samuel Akers, and it was so agreed and understood at the time, and that this was the *main consideration* for releasing the fifty acres of land. This testimony, so offered, was also ruled out by the court, and Fisk, by his counsel, excepted.

1. It was competent for C. F. Akers to testify what was the agreement between the parties, and as to the consideration

of that agreement, but it was not competent for him to testify as to what was the *intention* of that agreement.    Inasmuch as it was competent for C. F. Akers to testify as to what was the agreement of the parties and the consideration therefor, it was also competent for J. & D. N. Speer, the other parties to it, to testify in rebuttal as to what was the agreement of the parties, and what was the consideration for it, as they proposed to do.    The distinction between the testimony of Akers and that offered by the Speers, is this: Akers stated what was the "intention of the agreement" without stating what was the intention of *the parties* to that agreement; whereas, the Speers offered to testify what was the agreement and the intention of *the parties* to that agreement, and the consideration therefor. The ruling out of the testimony of the two Speers, which was offered in relation to that point in the case, was error.

2. The theory of C. F. Akers' claim to the money in the sheriff's hands, as disclosed by his evidence, was that Fisk had agreed, in consideration of the proposed settlement between his father, Samuel Akers, and himself, to assign to him, C. F. Akers, his mortgage lien on the fifty acres of land for his own benefit, as compensation for professional services rendered in the suits which were to be dismissed, for his father, Samuel Akers, and the giving up of the draft on P. Pease. The theory of Fisk's claim to the money was, that the assignment of the lien of the mortgage on the fifty acres of land was made by Fisk in consideration that he should be allowed to make the money due on his mortgage *fi. fa.* out of the other land covered by his mortgage, without any further litigation by Samuel Akers, and that it was so agreed and understood between the parties at the time, but that the said Samuel Akers, in violation thereof, renewed the litigation by interposing a claim to the land levied on, taking a homestead therein, and selling the same, etc., and has thereby wholly defeated the collection of the money due on his mortgage *fi. fa.*, all of which he proposed to prove, which the court refused to allow him to do.    This was error.    The court should have allowed the evidence to have gone to the jury, and let

them have decided, from the evidence, what was the true agreement between the parties, and the consideration therefor. This being an equitable proceeding to distribute money in the sheriff's hands, it would be competent for the jury, if the pleadings shall be so framed as to authorize it, to so mould their verdict as to protect the rights and interests of the respective parties, and do justice between them as they may believe from the evidence they are respectively entitled.

Let the judgment of the court below be reversed.