25698. PLANTERS COTTON-OIL COMPANY *v.* BELL.

DECIDED OCTOBER 16, 1936. REHEARING DENIED OCTOBER 29, 1936.

434

*Henry G. Howard, W. A. Slaton,* for plaintiff.

*Clement E. Sutton,* for defendant.

GUERRY, J. Planters Cotton-Oil Company filed this action against T. W. Bell on a written contract whereby the defendant agreed to purchase cottonseed for plaintiff during the season of 1934, on money to be advanced by plaintiff. According to the terms of the contract, the seed were to be delivered to plaintiff after purchase by the defendant. The contract further provided: "It is a part of this contract that the said T. W. Bell is to receive as compensation the car-load price for the cottonseed the date shipped. It is a part of the contract that the cottonseed bought is to be shipped out as fast as a car-load is accumulated." The petition alleges that the plaintiff advanced $13,002.27 under this contract, and that the defendant delivered approximately 290 tons of cottonseed, which were credited to him at the car-load price the day they were delivered, and that said credit amounted to $12,086.99, leaving a balance of $915.28 due to the plaintiff. The defendant admitted the correctness of the amount of money alleged to have been advanced him by plaintiff, and the number of tons of cottonseed he delivered to plaintiff. However, he denied the correctness of the credits made, by reason of the price allowed for the seed. It was the contention of the defendant that after the execution of the contract, it was departed from by subsequent agreements and conduct, and that on the sale of each lot of seed the price was agreed upon either orally or by certain sales memoranda signed by both parties; and that for each sale made a complete and distinct contract was had, which was either ratified later in writing by plaintiff or fully acted upon by both parties; that the plaintiff agreed continually to allow the defendant to haul the seed as he bought them to plaintiff's mill in Augusta; and when defendant was ready to sell, a price would be agreed on by both parties, which agreements as to price and amount of seed were made with W. H. Harbor, agent of the plaintiff; that if the seed had already been delivered without the price being agreed on, defendant was to be given credit on his account at the sale price; and that if seed had not been delivered, defendant was credited with the agreed price when delivery was made. Nine such con-

tracts were made between the parties, covering 205 tons of seed, six of which were confirmed in writing, the others not so confirmed but both parties being in agreement thereto. The dispute arose as to the amount with which the defendant should be credited for 85 tons of seed. He contended that Harbor, who for the plaintiff had made the other contracts with him as to price and amount of seed, agreed in January, 1935, that defendant was to be allowed $50 per ton for said 85 tons, and that at that price the plaintiff would owe him $185. The jury returned a verdict for this amount.

By demurrer and by exceptions to the charge of the court to the jury the plaintiff contended that the statute of frauds prevented the operation of any abandonment of the original contract or change in its terms. If the plea filed by the defendant had attempted to engraft an oral contract onto a contract required by the statute of frauds to be in writing, the demurrer would have been well taken. A subsequent oral contract fully executed prevents the operation of the statute. Code, § 20-401 (7); *Daniel* v. *Hannah,* 106 *Ga.* 91 (31 S. E. 734); *Castlen* v. *Marshburn,* 8 *Ga. App.* 400 (69 S. E. 317); *Good Roads Machinery Co.* v. *Neal,* 21 *Ga. App.* 160 (5) (93 S. E. 1018). The evidence, while conflicting, was sufficient to support the verdict. It is uncontradicted that instead of the price of seed being determined by the market price of the day shipped, as provided by the written contract, the price of at least 205 tons of these seed was fixed and controlled by nine subsequent written or oral agreements entered into between the parties. There is evidence that after all but about six tons of the seed were delivered, an oral agreement was entered into, fixing the price of 85 tons of seed. There was evidence from which the jury were authorized to find that an authorized agent of the plaintiff made an agreement as to the price to be paid for the seed which the defendant claimed had not at that time been settled for, which price was not in excess of the market price on the day the agreement was made. This same agent had made most of the other nine contracts. The president of the plaintiff company testified: "Mr. Harbor [the agent referred to] is our traveling salesman. He dealt with Mr. Bell, bought seed from Mr. Bell. . . After this dispute came up, I sent him up here a number of times to adjust the matter. Harbor had authority to settle within

certain limits." Under the original contract the plaintiff employed Bell as a cottonseed buyer. He was to buy seed at prices to be fixed by plaintiff, keeping a full record of all transactions. Money furnished to him was to be held in trust and used solely for the buying of the seed. His compensation was to be the carload price of seed on the day shipped to the plaintiff. Bell lived at Tignall, Georgia. It was known that there was no railroad at Tignall. The manager of the plaintiff testified: "After that contract was executed and Mr. Bell purchased cottonseed under that contract for my account, I made him written contracts for the delivery of particular quantities of seed. There are eight or nine of these contracts." The evidence disclosed that these contracts were executed at various times, the first September 10, and the last on December 9. The price to be paid was from $33 per ton to $50. None of these seed were delivered in car lots, but were sent by trucks to the plaintiff in Augusta. Tickets were issued to the drivers of the trucks for the amount of seed, and a price was placed thereon. The contract executed by plaintiff with defendant shows that the price fixed by the tickets delivered to the truckdrivers was not the price at which the seed were actually sold, and that the amount of the actual sale price was fixed by the terms of subsequent contracts. The plaintiff's manager testified that where "there was no specified sale made and the seed were delivered, the price was the car-load price the day of delivery. . . Where we had no specified written contract with Mr. Bell, the price credited him was the car-load price we were paying that day." It is evident from a comparison of the account attached to the petition, and of the time and amount of the delivery of the various quantities of seed, that the jury was authorized to find that the defendant delivered the seed in trucks as they were bought, and that the price with which the defendant was to be credited therefor was agreed on subsequently. The jury having found in favor of the defendant's contention, and there being evidence to support the same, the judgment will not be disturbed.

*Judgment affirmed.* *Broyles, C. J., and MacIntyre, J., concur.*