28492. FEAGIN *v.* GEORGIA-CAROLINA INVESTMENT COMPANY.

**616**

*O. C. Hancock,* for plaintiff in error. *R. B. Pullen,* contra.

Stephens, P. J. On December 22, 1939, the Georgia-Carolina Investment Company brought suit against O. B. Feagin, alleging, that the defendant was indebted to it in the sum of $1350, with interest from July 21, 1927; that the plaintiff is the holder and owner of a series of notes of $25 each, payable to the plaintiff, executed by the defendant and numbered consecutively from 43 to 96; that note number 43 matured on March 1, 1931; that the remainder of such notes matured monthly seriatim thereafter until all of the notes are now past due and unpaid, and that the defendant had refused to pay these notes. It appears from a copy of one of the notes sued on, attached to the petition, that it was note number 43 of the series of notes referred to in the petition, and given as purchase-money for a certain tract of land, as shown by a security deed of even date therewith. The defendant answered, admitting the execution of the notes, but denying liability thereon. He alleged that the consideration of the notes had wholly failed, and that he was not indebted to the plaintiff in any sum, for the reason that the notes were given for the purchase-price of a house and lot described in a warranty deed made by the plaintiff to the defendant, and to secure such purchase-money the defendant executed to the plaintiff a security deed to such property; that the consideration of such notes had wholly failed, in that the property described in such deeds was delivered to the defendant, who lived in the house located thereon until September 1, 1929, vacating the premises on that date; that on or about February 1, 1930, the defendant delivered the described property to the plaintiff, and the plaintiff accepted the possession thereof and collected the rents therefrom directly from the tenants "and one Woodall, also a tenant;" that from such date the defendant has never exercised

any possession or control of the premises, but on the contrary the plaintiff has exercised complete control and held the possession thereof; that the defendant has never exercised any ownership or attempted to collect any of the rents from the premises from February 1, 1930, until the present time (about nine years); and that the acceptance of the described property and the collection of the rents by the plaintiff rendered the notes sued on without any value in law. The defendant further alleged that on August 23, 1937, he was adjudicated a bankrupt, and had filed his application for discharge on August 23, 1938; that Brooks B. Patterson, agent of the plaintiff, had actual knowledge of the bankruptcy proceedings; and that the defendant was thereby discharged from any liability on the notes sued on.

Attached to the answer was a copy of the warranty deed from the plaintiff to the defendant, and also a copy of the security deed, referred to above, which provided, among other things, that time was of the essence of the contract, and should the party of the first part (the defendant), fail to pay taxes or insurance or fail to pay interest on the prior loan or any one of the secured purchase-money notes when due, all of such notes should become due and payable at once. The security deed further provided: "The said party of the first part further covenants and agrees that in the event the debt secured hereby should not be paid when it becomes due by maturity, in due course or by reason of a default as hereinabove provided, the said parties of the second part or assigns may enter upon said premises and collect the rents and profits thereof, and may sell the said property at auction at the usual place for conducting sales, at the court-house in Fulton County, Georgia, to the highest bidder for cash," etc. It was further provided that the party of the second part (the plaintiff) could execute and deliver a deed to any purchaser at such sale of the premises, and that the "profits" of such sale should be applied first to the payment of the indebtedness secured by the security deed in full and to the payment of all expenses connected "with said profits, including ten per cent. of the principal and interest as attorney's fees; and the remainder, if any, shall be paid to the party of the first part, his representatives or assigns."

At the trial the plaintiff moved to strike that part of the plea to the effect that the taking back of the property sold canceled

the trade and annuled the consideration of the notes. The judge sustained that motion, and rendered the following judgment: "Upon oral motion to strike that portion of the within plea relative to failure of consideration, and upon consideration of same, it is ordered that said motion be and the same is hereby sustained." To this judgment the defendant excepted pendente lite, on the ground that that part of the plea stricken contained a good defense to the suit on the notes. The case proceeded to trial, and the plaintiff put in evidence the notes referred to as numbers 43 to 96, inclusive. This was all the evidence. There was no evidence in support of the defendant's plea of bankruptcy. The judge directed a verdict for the plaintiff in the full amount sued for. The defendant moved for a new trial on the general grounds, and assigned as error the direction of the verdict. The judge overruled the motion, and the defendant excepted, assigning error on the rulings just stated.

■ It appears, from the allegations of the plea which was stricken on motion, that the defendant relinquished to the plaintiff all possession and control of the property, and that the plaintiff "exercised complete control over the property," held the possession thereof, and collected the rents from the tenants; and that the acceptance of the premises by the plaintiff and the collection of the rents thereof rendered the notes sued on "without value in any sum whatsoever." Since the plaintiff, under the security deed, already held the legal title to the property by virtue of the provisions of the security deed, this absolute surrender of the property to the plaintiff by the defendant, and the plaintiff's acceptance thereof, and the exercising, from February 1, 1930, to December 22, 1939, of full and complete control of the property, to the exclusion of the defendant, amounted to a vestment in the plaintiff of all right, title, and interest in the property. Under these allegations, the plaintiff, by virtue of the transactions alleged, acquired full title and possession, and the defendant was divested of any title or interest in the property. This necessarily annuled or rescinded the contract of sale. The necessary result of this transaction released the defendant from any obligation under the contract to pay the unpaid balance on the purchase-price. Whether or not the plaintiff, as the seller, had any right, under the contract of sale as expressed in the security deed attached to the plea as an exhibit, to repossess the property and collect the rents or sell the property

and apply the rents or the proceeds of the sale to the unpaid portion of the purchase-price, the transaction as alleged in the plea was not such a repossession as is contemplated under the provisions of the security deed. The transaction alleged amounted to a resumption by the plaintiff of complete control and dominion of the property, to the exclusion of the defendant, which constituted absolute ownership of the property—a situation entirely different from the mere resumption of possession of the property for the purpose of collecting rents or selling the property and applying the rents or proceeds on the debts. See *Sterchi Co.* v. *Harris*, 47 *Ga. App.* 772 (171 S. E. 457).

A vendor or seller of property can not take back from the purchaser and retain for his own use the property sold under contract of sale, and at the same time recover from the vendee or purchaser the unpaid purchase-price thereof, in the absence of some contractual right to do so. Where the purchaser abandons his contract and surrenders possession of the land to the seller, and the seller accepts the property and acquiesces in the abandonment of the contract, he can not thereafter enforce the obligation of the contract against the vendee. See 66 C. J. 733. A rescission of a contract for sale of land may be implied from the act of the parties, as where the vendor accepts surrender of possession of the premises and thereafter exercises ownership thereof. 66 C. J. 737, § 303; *Johnson* v. *Peoples Bank*, 36 *Ga. App.* 570 (137 S. E. 104). This would release the purchaser from further obligation under the contract. *Woodland Hills Co.* v. *Lawton*, 37 *Ga. App.* 742 (142 S. E. 208). Where a contract for sale of land is rescinded by mutual consent, the rights of the parties under the contract are extinguished, and the vendor can not, after such rescission, maintain an action for the purchase-price, or upon notes given for the money. 66 C. J. 739, § 305. Where the vendor rescinds the contract of sale, such rescission is a good defense to an action by him to recover on notes given by the vendor for the purchase-money of the land. 66 C. J. 1379, citing *Woodland Hills Co.* v. *Lawton*, supra.

■ It is immaterial that the alleged contract of rescission was not in writing. Whether or not it was required to be in writing under the statute of frauds, if it was a contract of rescission, it was a contract executed by both parties by the surrender of the prop-

erty to the plaintiff and the acceptance thereof by the plaintiff, and therefore it was not within the statute. The court erred in striking part of the plea of the defendant. The subsequent proceedings were nugatory.

*Judgment reversed. Sutton and Felton, JJ., concur.*