29244. BLEVINS AIRCRAFT CORPORATION *v.* GARDNER.

Decided March 11, 1942. Rehearing denied March 27, 1942.

*Mose S. Hayes,* for plaintiff.

*Powell, Goldstein, Frazer & Murphy, James K. Rankin, James W. Dorsey,* for defendant.

STEPHENS, P. J. Blevins Aircraft Corporation by its attorney at law, Mose S. Hayes, made affidavit, as provided by law, in which he deposed that I. Gibson Gardner, trading as Aircraft Finance Company, was indebted to Blevins Aircraft Corporation in the sum of $1049.66 and that the defendant is a nonresident of the State, and simultaneously therewith executed the required attachment bond. Thereupon an attachment issued and was levied on two described airplanes, which were found at the hangar of Blevins Aircraft Corporation at Candler Field, as the property of the defendant. A declaration in attachment was filed, in which it was alleged that the defendant resided in Buffalo, New York; that the defendant had property consisting of two airplanes levied on located in Fulton County, Georgia, and that the defendant was due the plaintiff $1049.66 "for services rendered for labor and material furnished and storage" of said airplanes, payment of which had been demanded and refused; that the account was just, due and unpaid, and that an itemized copy of the account was attached. The ex-

hibit attached set out that the defendant was indebted to the plaintiff as to one of such airplanes for labor and material in repairing it $244.66, and $390 for storage at $15 a month for 26 months, and also that the defendant was due the plaintiff as to 'the other airplane, $40 cartage to Atlanta and $375 for 25 months' storage at $15 a month. In his answer the defendant denied liability, and by way of cross-action alleged that the plaintiff was indebted to him, the Aircraft Finance Company, on two certain promissory notes which had been executed by the respective purchasers of the two airplanes referred to in the declaration, which notes had been transferred and indorsed by the plaintiff to the Aircraft Finance Company. ·

The case came on for trial. It appeared that the plaintiff sold the two airplanes, one to Roy Phillips on October 26, 1937, and the other to Thomaston Flying Club on August 6, 1937. It also appeared that these sales were not for cash, and for the unpaid purchase-price the buyers executed their promissory notes together with contracts in which each buyer gave the seller a mortgage on the airplane purchased. These mortgage contracts provided that on default by the mortgagor in the payment of the purchase-money note the mortgagee could, without notice or liability for damage, take possession of the airplane wherever found and resell it at public or private sale without notice to the mortgagor, and, from the proceeds of the sale, the mortgagee should first deduct all expenses of retaking, repairing and selling the airplane, and apply the balance to the payment of the note. The mortgage contract provided that any surplus from the sale should be paid to the mortgagor, and that any deficiency in the amount realized from such a sale should be paid by the mortgagor to the mortgagee. The contract also provided that the mortgagee could bid at any sale. It also appeared that immediately after the sale of each of the airplanes the note and contract executed by the purchaser to the present plaintiff was transferred by it to the defendant, Aircraft Finance Company, in the following language: "For value received, the undersigned does hereby sell, assign and transfer chattle mortgage unto Aircraft Finance Company, 514 M. & T. Bldg., Buffalo, N. Y." Phillips defaulted in the payment of the purchase-money note, and on April 3, 1938, the defendant telegraphed the plaintiff to seize the airplane sold to Phillips. It was recited in the telegram as follows:

"Please consider this wire your authority to seize aircraft." The Thomaston Flying Club likewise defaulted in paying its purchase-money note and in addition wrecked the airplane. The defendant instructed J. F. Byrd, the president of the plaintiff corporation, to repossess this airplane for the defendant. These airplanes were repossessed from the purchasers and retained by the plaintiff in its hangar at Candler Field. It was necessary to cart the wrecked plane to Candler Field. The plaintiff made certain repairs to the plane taken from Phillips, during the first part of 1939. Neither of these airplanes was sold by the defendant, or by the plaintiff for the defendant, but both were kept at the plaintiff's hangar.

The jury returned a verdict in favor of the plaintiff against the defendant for $150, and also in favor of the defendant on his cross-action against the plaintiff for $1680 principal and $395 interest. It appears that the verdict for the defendant on the cross-action was directed by the court, and that the claim of the plaintiff against the defendant for repairs to one airplane and storage of both air-planes was submitted to the jury. The court instructed the jury that the plaintiff's claim for $40 cartage was stricken because the evidence showed that the purchasers of that airplane had themselves carted it to the plaintiff's hangar at Candler Field. A judgment was entered on the verdict that the defendant recover of the plaintiff $1925. The plaintiff moved for a new trial on the general grounds and by amendment added several special grounds in which it complained of the introduction of certain documentary evidence and of certain charges of the court to the jury, and in which it also assigned error on the direction of a verdict for the defendant on his cross-action. The judge overruled the motion and the plaintiff excepted.

While, under a contract of sale of personalty which authorizes the seller on default by the purchaser to retake the property and at any time thereafter sell it for the benefit of the purchaser and apply the proceeds derived from such sale on the unpaid purchase-money, the mere retaking of the property by the seller would not constitute a rescission of the contract of sale, yet, where the seller after retaking the property refrains for an unreasonable length of time from selling it, as provided in the contract, and devotes the property to a use inconsistent with an intention on his part to resell it as the agent of the purchaser, the inference is authorized

that the seller has elected to treat the property as his own, thereby rescinding the contract of sale. See *Hargett* v. *Muscogee Bank,* 32 *Ga. App.* 701 (5) (124 S. E. 541). The buyer is entitled, under such a contract, to have the property resold after it has been retaken by the seller within a reasonable time, and the burden is on the seller, where it appears that personal property sold under such a contract has been retaken by the seller, to show, in order to prevent the retaking to operate as a rescission, that such retaking was under and in accordance with the terms of the contract, and if there has not been a resale of the property the seller should show that under the circumstances he has not retained possession of the property without making such resale an unreasonable length of time. See 55 C. J. 1275; *Hargett* v. *Muscogee Bank,* 32 *Ga. App.* 701 (5) (124 S. E. 541). Where the conditional seller on default of the buyer, repossesses the property sold, it amounts to a rescission of the contract of sale, unless the seller is authorized by the contract to repossess the property and such retaking is in accordance with the contract. See *Glisson* v. *Heggie,* 105 *Ga.* 30 (31 S. E. 118); *Dasher* v. *Williams,* 30 *Ga. App.* 122 (117 S. E. 108); *Cornett* v. *Newsome,* 27 *Ga. App.* 340 (108 S. E. 254). In *Dasher v. Williams,* supra, this court correctly held that "Where property has been sold and delivered under a conditional sale, and the buyer has failed and refused to pay the purchase-money due thereon, and the seller retakes possession of the property and holds it as his own, without giving the buyer any credit for its value, such retaking of the property operates as a rescission and cancellation of the contract of sale." In order to prevent the retaking of personal property by the conditional seller from operating as a rescission the retaking must be in accordance with some statute or pursuant to contract, and where the contract provides that the seller may retake on default of the buyer and resell the property, applying the proceeds to the purchase-money and the surplus, if any, to be turned over to the buyer, and the seller retakes the property thereunder, there must be a resale of the property in accordance with the terms of the contract, and this resale must take place without unreasonable delay. See 55 C. J. 1276, 1277, and cit.

By the assignment by the plaintiff, the seller, to the defendant, the plaintiff's transferee, of the plaintiff's rights under the contract of sale, the defendant acquired the rights of the plaintiff seller

under the contract, and could, as provided in the contract, where the purchaser had defaulted in the payment, repossess the property and sell it under the terms provided in the contract. Only the defendant, the assignee of the plaintiff seller, after the assignment to the defendant of the contract of sale by the plaintiff, could repossess the property under the terms of the contract for nonpayment by the buyer. The plaintiff seller, who had assigned the contract to the defendant had, after such assignment, no right to repossess the property under the terms of the contract for nonpayment of the purchase-money by the buyer. Only the defendant, the seller's transferee, possessed such right. The plaintiff's act in repossessing the property from the purchaser was done in response to a telegram from the defendant transferee directing the plaintiff to repossess the property. The defendant, the transferee, by this direction to the plaintiff, the seller, must have necessarily been acting under his right as transferee of the seller under the contract to repossess the property. The plaintiff seller, in acting in response to the direction of the defendant transferee to repossess the property, could, in the opinion of the jury, in so doing, have been acting, not for himself, but for the defendant. It is the opinion of the writer that such inference is demanded from the evidence, but it is only necessary to commit the court to the proposition that the jury could have inferred from the evidence that the plaintiff in repossessing the property acted solely as agent for the defendant, and that the plaintiff's act of repossession was the defendant's act. If the plaintiff's act of repossessing the property at the instance of the defendant, as it was, was an act of the defendant, through the plaintiff as the defendant's authorized agent so to do, as the jury could have found, the jury also could have found that the plaintiff, after repossessing the property at the defendant's instance, held the property for the defendant, and that the defendant, notwithstanding the physical possession of the property was in the plaintiff, had continuous dominion and control over the property, and that the failure of the defendant to sell the property under the terms of the contract, was, under the evidence a failure to sell the property within a reasonable time, and such failure amounted to a conversion by the defendant of the property to his own use and amounted to a rescission by him of the contract. Such rescission necessarily released the plaintiff, the seller, as transferor, of any

obligation under the contract of assignment or otherwise, to the defendant. The evidence was sufficient to authorize a finding that the plaintiff was not liable to the defendant on the cross-action. It follows that the evidence did not demand a verdict for the defendant on the cross-action, and the court erred in the direction of a verdict for the defendant on the cross-action. The court erred in overruling the plaintiff's motion for new trial.

*Judgment reversed. Sutton and Felton, JJ., concur.*