33414. PETHEL *v.* GENERAL FINANCE & THRIFT CORP.

DECIDED MARCH 2, 1951. REHEARING DENIED MARCH 16, 1951.

*Frank B. Stow, G. Fred Kelley,* for plaintiff in error.

*Sloan & Telford, Robert T. Efurd, Noah J. Stone,* contra.

FELTON, J. General Finance & Thrift Corporation sued D. T. Pethel Jr., individually and as sole surviving partner of the firm of Simpson Motors. The petition is in two counts, the first alleging an indebtedness of the partnership on certain combination promissory notes and bills of sale to automobiles to secure debt, the second alleging liability on the part of the defendant individually on a contract of suretyship covering the above partnership obligations. The petition alleged an indebtedness of $16,087. With reference to the first note sued on the petition alleged: "That on July 6, 1949, Simpson Motors borrowed from your petitioner the sum of $4,435, as evidenced by a bill of sale to secure debt and note, a copy of which is hereto attached marked exhibit 'A' and made a part of this petition. That as appears from said note and bill of sale, there was conveyed to secure said indebtedness four automobiles, and three of them have been paid for, and the automobile described as One Oldsmobile 4 Dr. Sedan, Serial No. 78-36518, Motor No. 8-6041-H, of the value of $945 has not been paid, and the defendant is indebted to your petitioner in this sum upon this bill of sale and note." Like allegations were made as to the other notes and bills of sale. The aggregate amount of the 7 notes was $38,166. The petition further alleged: that in making the loans to the Simpson Motors on each of the transactions set out in exhibits "A" to "G", inclusive, they were what is known in the automobile business as floor plan contracts, that is, the bills of sale and notes were executed for the amount of the loan carrying the number of cars conveyed to secure said loan and the amount of money loaned against each individual automobile; that the automobiles remained in the possession of and on the floor of the Simpson Motors' place of business and when it would sell a car, the sum received as loaned against that particular car would be delivered to the petitioner and credited against each respective note; that in each transaction alleged in the petition the amount and car described in each exhibit and paragraph is the amount of the loan against the automobile described in the paragraph, and is the amount due to petitioner. The petition also alleged that various automobiles described in the

bills of sale "had been paid for," evidently meaning that the amount loaned on such cars had been paid and that the note involving such car was entitled to credit in the amount at which the car was valued in the note. The petition did not allege whether the credits were voluntary payments or whether the cars were sold by the plaintiff under a provision of the notes and bills of sale. The bills of sale conveyed thirty automobiles. There were no credits entered on the backs of the notes sued on. The defendant filed pleas of non est factum about which there is no question to be decided. The defendant denied the existence of a partnership, alleged that for want of sufficient information he could neither admit nor deny the various allegations except the allegation of indebtedness and that was denied. The jury found for the plaintiff in the sum of $16,087 plus interest. The defendant's amended motion for a new trial was denied and he excepted. The evidence showed that some cars were taken and sold by the plaintiff and the proceeds applied to the account of the partnership indebtedness. The witness for the plaintiff did not know exactly how many of the cars were sold but to the best of his recollection there were twenty-three. He testified that the cars were sold for $20,450. He did not testify or show the details of the sale as to when each car was sold, to whom, and at what price, or whether at public or private sale under the provisions of the bills of sale. The plaintiff's witness further testified that Simpson Motors delivered twelve checks to the plaintiff to cover the indebtedness on the cars on which there was a balance due and that these checks were returned unpaid by the bank on September 13, 1949, marked "proprietor deceased." The plaintiff's witness testified that checks sent to the plaintiff by the partnership were credited on the plaintiff's ledger on the date they were received. There were, among others, twelve credits on the ledger, the amounts of which corresponded to the amounts of the twelve checks returned by the bank to the plaintiff unpaid, and the credits referred to the same automobiles as described on the checks, but the credits on the ledger did not show that the credits represented checks, whether paid or unpaid. Six of the checks returned to the plaintiff by the bank were dated 9-9-49, two were dated 9-7-49 and four were dated 9-8-49. There were credits on the ledger corresponding to the

amounts and cars for which the twelve checks were given but only six of the checks were entered as credits on the days they were received. The other six credits corresponding to the checks in amount and description of vehicle were credited on September 30 or October 7. There was a total of twenty-seven credits on September 30 and October 7, at least some of which the inference is demanded were duly entered by reason of the sale by the plaintiff of various automobiles owned by the partnership. There was no explanation by the plaintiff as to why all of the checks were not entered the day they were received and why some of them were credited the day they were received and some (if the credits represent the payments by check) weeks after the bank returned the checks unpaid. The total credits on September 30 and October 7 are $29,486. The checks credited on the days received total $8,370. The defendant does not contend that he is due credit for these items as he concedes that these credits were for the amounts of the checks which were not paid and that the plaintiff was entitled to charge the credits back upon dishonor of the checks. The defendant does contend that the partnership and he are entitled to all of the credits of September 30 and October 7 unless some explanation is offered as to why the partnership is entitled to some of them, admittedly, but not to all of them, as he would be liable for only the amount of the checks credited on the day they were received, if he was entitled to all of the credits of September 30 and October 7. The plaintiff's witness testified in substance that the balance of principal due was the amount of the returned checks. He testified that there were 23 automobiles sold and that they brought $20,450. If the automobiles sold for $20,450, there was a balance due on the notes of $17,716 instead of $16,087 as represented by the checks. So the plaintiff was either mistaken as to what the cars sold for or as to the true balance due. We think this case should be reversed and tried again for the reason that since the action was brought for a balance claimed to be due, the burden was on the plaintiff to show in detail what the credits were, and under the circumstances of this case to show how the cars were sold by the plaintiff, whether at public or private sale, to whom sold and the selling price of each vehicle. The cars were sold by the plaintiff as agent or

attorney in fact for the partnership, under the provisions of the notes, and the plaintiff owed both good faith and due diligence in the sale of each car and the defendant is entitled to this information before a deficiency judgment- should be rendered against him. Furthermore, there may be a good, though simple, explanation of the manner in which the credits were entered on the plaintiff's ledger, but we do think that the defendant is entitled to an explanation in view of the way at least some of the credits were arrived at.

There are several exceptions assigning error on the charge of the court. Since under our rulings on the main question the alleged errors will not likely occur on another trial, it is not deemed imperative to rule on these questions.

The court erred in overruling the motion for a new trial on the general grounds.

*The judgment is reversed with direction that the issue on the next trial shall be confined to the sole question of the amount the plaintiff is entitled to recover, if any. Sutton, C.J., and Worrill, J., concur.*