33780. FLATAUER *et al. v.* GOODMAN.

DECIDED NOVEMBER 21, 1951.

882

*John L. Westmoreland, John L. Westmoreland Jr.,* for plaintiffs in error.

*C. Baxter Jones Jr.,* contra.

SUTTON, C. J. ■ In ground 4 of the defendants' motion for a new trial, complaint is made of the admission in evidence of the plaintiff's testimony that the machine she purchased from the

defendants was in a defective condition when it was delivered to her and never worked afterwards, although the defendants attempted to repair it on several occasions before it was returned to them, over the objection that this testimony was irrelevant, immaterial, incompetent, and highly prejudicial to the defendants.

The trial judge in his charge instructed the jury that this evidence was admitted solely for the purpose of showing that the parties had certain negotiations and for no other reason. The defective condition of the machine was a fact relevant to the negotiations leading up to the alleged oral contract of rescission of the written contract, and it was not error to admit the evidence for the purpose stated by the trial judge. See *Green* v. *Akers*, 55 *Ga.* 159; *Flanders* v. *Maynard*, 58 *Ga.* 56 (7).

The movants contend that the evidence admitted over their objection was prejudicial because of the provision in the sales contract against express or implied warranties; but, under the plaintiff's theory of the case, this contract had been rescinded. *Butts* v. *Groover*, 66 *Ga. App.* 20 (16 S. E. 2d, 894), cited and relied on by the movants, held that evidence of defective condition of the goods was properly excluded, where the contract, containing a provision against warranties, had been *affirmed* rather than rescinded; but that decision is not applicable here, where the plaintiff's suit is based on a rescission of the written contract. Parol evidence varying the terms of a written contract is admissible where it is relevant as illustrating an issue of a parol agreement to rescind the written contract. *Saunders* v. *Hudson*, 30 *Ga. App.* 732 (119 S. E. 535). Ground 4 of the motion shows no error.

■ The movants contend in ground 5 that the court erred in charging the jury as follows: "The effect of the plea and answer is to put the burden of proof on the plaintiff, the party suing, to show to your satisfaction by a legal preponderance of the evidence in the case that the allegations she makes are true. Except the allegations which are admitted by the defendant they will be, taken as true, and preponderance of the evidence means the greater weight of the evidence. The law defines it as being that superior weight of the evidence upon the issues involved, which while not enough to wholly free the mind from a reasonable

doubt, is yet sufficient to incline a reasonable and an impartial mind to one side of the issue rather than the other. Under the law you are made the exclusive judges of the weight of the evidence, and being so you will determine for yourselves where the greater weight or preponderance of it rests on any question you have under consideration. The law also makes you the exclusive judges of the witnesses in the case. In passing on this question you have a right to take into consideration their manner and deportment on the witness stand as they were examined in your presence, the opportunities they had for knowing the facts about which they testified, the probability or improbability of the facts to which they did testify, the interest they had in the case or the absence of such interest, and the reasonableness of their evidence in your opinion, and you may take into consideration the personal credibility of the witnesses so far as that may legitimately appear to you from the trial of this case." It is contended that the court should have given in charge the language of Code § 38-107; that the charge omitted certain parts of this Code section; and that the quoted part of the charge given was incomplete, erroneous, confusing and misleading.

It will be seen that the trial judge here first defined preponderance of the evidence by giving Code § 38-106 in charge to the jury, and then instructed them that the determination of the preponderance of the evidence on any question was for the jury, without giving the method for such determination. This was not error. In the absence of a proper request, the court is not required to charge the provisions of Code § 38-107, which specifies what the jury may consider in determining where the preponderance of the evidence lies. *Edge* v. *Dorsey*, 78 *Ga. App.* 70, 74 (50 S. E. 2d, 227). It was also ruled in the case just cited that "It is apparent from the charge of the court in the present case that the judge, after charging the jury as to the meaning and effect of the preponderance of evidence (Code, § 38-106), which in the absence of a request is all that is required, had completed his charge on preponderance of evidence, and was then charging the jury on the credibility of witnesses when he gave the charge which is excepted to in this ground of the motion." We have the same situation in the case now under

consideration. The judge had completed his charge on preponderance of evidence, which was a correct charge in the absence of a proper request, and then he instructed the jury that the law also made them the exclusive judges of the witnesses, and was charging on the credibility of the witnesses when he omitted certain language contained in Code § 38-107. See also *Rome Ry. & Light Co.* v. *King,* 33 *Ga. App.* 383, 386 (126 S. E. 294), and cases there cited. The charge here complained of was not error.

■ Grounds 6, 7, 8, 9, 10, and 11 of the motion set out as error the failure of the court, without request, to give in charge to the jury the principles of law contained in the Code, §§ 20-101, 20-107, 20-108, 20-301, 20-302, and 20-304, consisting of the definitions of a contract, a valid contract, an incomplete contract, nudum pactum, and valid consideration, and of the principle that a promise is good consideration for a promise; and it is contended that the court failed to charge the jury the law applicable to the material issues made by the pleadings and the evidence. "It is the settled general rule that a trial judge, whether requested in writing or not, should give to the jury appropriate instructions on every substantial, vital, and controlling issue presented by the pleadings and evidence. [Citations.] But it is also the established general rule that, where the judge has thus fairly and correctly instructed the jury, a party who desires more specific and concrete instructions as to one of his contentions, or a definition or more detailed explanation of general technical or legal words or phrases, should make in writing a timely request therefor." *Rome Ry. & Light Co.* v. *King,* 33 *Ga. App.* 383 (2), supra; see also *A. A. A. Highway Express* v. *Hagler,* 72 *Ga. App.* 519, 521 (34 S. E. 2d, 462). The trial judge's charge to the jury in the present case amply covered the issues of the case and, if more specific instructions and definitions were desired, a proper written request to charge should have been made. *Poullain* v. *Poullain,* 76 *Ga.* 420 (6 b). Grounds 6 through 11 of the motion are without merit.

■ In ground 12 of the motion, it is averred that the court erred in failing to charge, without request, that the plaintiff could not recover unless the agreement to rescind was made at or before the time the machine was returned, or unless the plain-

886

tiff gave the defendants something in earnest to bind the bargain. An oral agreement of rescission, executed by the return of the property to the seller and its acceptance by him, may be enforced. *Feagin* v. *Georgia-Carolina Investment Co.,* 63 *Ga. App.* 615 (2) (11 S. E. 2d, 813). See also *Planters Cotton-Oil Co.* v. *Bell,* 54 *Ga. App.* 433 (188 S. E. 41). And it is not required that the agreement to rescind be made before or even at the time the property sold is delivered back to and accepted by the seller, for such agreement may be implied where the vendor accepts possession and thereafter exercises ownership and control of the property. *Sterchi Bros. Co.* v. *Harris,* 47 *Ga. App.* 772 (171 S. E. 457); *Blevins Aircraft Corp.* v. *Gardner,* 66 *Ga. App.* 843 (19 S. E. 2d, 350). No error is shown by this ground of the motion.

■ The plaintiff testified, in part, as follows: "I recall buying this malt freezer from the defendants on or about April 30, 1946. . . After I got this machine delivered it never worked. It remained down at my place [in Griffin, Georgia] from the time I got it, which was either May 31, or the first few days in June, until I returned it in September, of the same year, 1946. . . I had discussions with Mr. Ben Flatauer or Mr. Moritz Flatauer about sending down to have it fixed. They sent some-one down to fix it; I don't know how many times, but I would estimate at least six times. . . It didn't reach a freezing temperature. . . Repeatedly when that machine would not work and I was back [in Atlanta], I told Mr. Ben Flatauer that I was not satisfied at all, that if that machine was not going to work that I didn't want it, so eventually I was told to bring the machine back; Ben told me that, so that's when I carried the machine back. . . When I brought the machine back they told me to come back within one week to see them. . . which I did, and this time Mr. Flatauer Sr. told me there was a defect in the cabinet, one which they could not repair, and they had to send it back to the original manufacturer. . . Then both of them started trying to sell me other equipment. . . a larger malt machine . . and I told him I did not want them. . . Neither one of them, during these discussions about selling me other equipment, mentioned replacing the machine I had with another one just like it. They did not have another

machine like it. . . The last time I talked with Ben Jr., he told me that within thirty days they would refund the money. At that time I did not have the malt freezer; that was months and months after I had returned it. . . That was in 1947, but I don't know what part of 1947. . . At the time I brought it to Atlanta I delivered it out to their place of business. At that time I had had no definite agreement at all except to bring the machine back; he said, 'Bring the machine back and we'll make this thing right.' That was all he said until I brought the machine back. He didn't imply making the machine right; the idea was making the situation right. . . . It was the following year, 1947, when Ben Flatauer told me that he would refund the money to me."

One of the defendants, Benno Flatauer, was called by the plaintiff for cross-examination and was later examined by counsel for the defendants. The following portions of his testimony are found in the brief of the evidence: "While the machine was in her possession . . I told her that we would get the machine to work. . . When the machine came back to Atlanta, the cabinet had a leak in it, and we sent the cabinet back to the factory, not the freezer part. We sent the cabinet back to the factory, and they replaced it with a new one. . . I remember the circumstances of her bringing the machine back to us; she brought the machine back and said that it wasn't working, and I told her if the machine was brought back we would put it under our complete check and see if anything was wrong, and if there was, it would be repaired and taken care of. I offered to repair it; I did not offer to replace it at that time. . . I told Miss Goodman that we would make the machine work regardless, because we can make any machine work. I probably told her we would make it work or give her her money back because we did make it work. . . I don't know whether I told her exactly whether it would work or not . . but we did make it work. I undertook to sell this machine for her, and I pushed that sale. . . I did not at anytime agree to return Miss Goodman's money. I agreed to sell the machine and after we sold the machine to return what we got for the machine. I have not pushed that sale too much since then. The machine is in our place of business now, and it has been since 1946. . .

I did say after the machine was sold I would refund her money."

The jury was authorized to find that, after the machine had been returned at the defendants' request, the defendants promised to refund the plaintiff's payments on the purchase price, in consideration of the plaintiff's surrender of her rights to possession of the freezer. Nothing further remained to be done by the plaintiff, since the machinery was already in the defendants' possession. Therefore, this oral agreement, fully executed by the plaintiff, rescinded the previous sales contract. See *Feagin* v. *Georgia-Carolina Investment Co.*, *Planters Cotton-Oil Co.* v. *Bell*, and *Sterchi Bros. Co.* v. *Harris* (supra, division 4 of this opinion).

The verdict was supported by the evidence, and the trial judge did not err in overruling the motion for a new trial.

*Judgment affirmed.   Felton and Worrill, JJ., concur.*