34547. BARRETT *v.* DISTRIBUTORS GROUP, INC.

DECIDED SEPTEMBER 18, 1953—ADHERED TO ON REHEARING DECEMBER 16, 1953.

*Thomas E. Morgan, Francis G. Millican,* for plaintiff in error. *Stanley P. Meyerson,* contra.

QUILLIAN, J. This is the second appearance of this case in this court. For a statement of the pleadings and the nature of the action, see the report of the case on its prior appearance here. Barrett v. *Distributors Group,* 85 *Ga. App.* 529 (69 S. E. 2d 810).

Upon the retrial of the case before a judge without a jury in the Civil Court of Fulton County, the plaintiff introduced two witnesses, Russell Magee, Treasurer of Distributors Group, Inc., and Stanley P. Meyerson, attorney for the plaintiff. The defendant alone testified in support of his contentions. Magee testified that he personally repossessed the property sold to the defendant under the terms of the contract of sale; that he sold some thirty-odd metal folding chairs to persons unknown to him on the premises where the property was repossessed, receiving therefor $12.75; that they advertised the merchandise in the Atlanta Journal, and as a result thereof sold 165 metal folding chairs to Joe Cotton for $132 on August 21, 1950; and on November 13, 1950, sold 75 theater chairs to the West End Baptist Church for $276; that they advertised a public sale of the merchandise in the Fulton County Daily Report, and sold the remainder of the merchandise on the courthouse steps for $500, making a total credit to the defendant's account after the repossession of the merchandise of $921.50; that the total expense incurred by the plaintiff in connection with the repossession and resale of the merchandise was $250.42. There was in evidence a copy of a ledger sheet showing the account of Barrett, the first entry of which was a debit of $4,828.55 on November 19, 1947. This exhibit showed numerous credits through February 13, 1951, totaling $2,357.51. Magee did not explain the item of $4,828.55, but did testify as to the credits totaling $2,357.51, and as to how he figured the balance due by the defendant as $1,775.83. He testified that the balance due on February 13, 1951, on the note of $4,023.79 was $2,053.78, but did not explain in detail how this amount was arrived at. He then testified as to the expense of repossession, $250.42, which, added to $2,053.78, makes $2,304.20, and then deducted $921.50 for merchandise sold for the account of Barrett, and calculated the balance due as $1,382.70 before adding $161.50 for interest from February 13, 1951, to October 13, 1952, and then adding $231.63 as 15% attorney's fees, making a balance due of $1,775.83. The court rendered judgment for $1,100 as principal and interest and $165 as attorney's fees, and for costs of court. The defendant moved for a new trial on the general grounds, and the motion was denied, to which judgment the defendant excepts.

The plaintiff in error contends that the plaintiff failed to make

out a prima facie case, and that the uncontradicted evidence demanded a verdict for the defendant. The contention is without merit. The evidence sufficiently showed the disposition made of the property repossessed, the amounts this property brought from resale, and the reasonableness of these amounts. The evidence showed that the plaintiff sold to one person at private sale 190 metal folding chairs for $144.74, and to a church 75 theatre seats for $276.75. While the plaintiff was collecting the property from the defendant's different locations, it sold 34 metal folding chairs to various persons. The remainder of the property was sold at public outcry to the highest bidder, and was bought in by the plaintiff for $500. It is contended that, in order to make out its case, the plaintiff was required to show the names of the various persons to whom the 34 metal folding chairs were sold and the prices received for each. We do not think that, under the facts of this case, the law places such a responsibility on the plaintiff. Its evidence showed that these chairs were sold in one, two, and three chair lots at various times to various persons at 50 to 75 cents each, and that the 34 chairs in all brought $12.71, which amount was credited to the defendant's account. There is nothing in the case of *Pethel* v. *General Finance & Thrift Corp.*, 83 *Ga. App.* 562 (63 S. E. 2d 907), which required the plaintiff to show the names of the persons who bought the 34 chairs and the price received for each chair. The statement in that case (bottom of page 565), that "We think this case should be reversed and tried again for the reason that since the action was brought for a balance claimed to be due, the burden was on the plaintiff to show in detail what the credits were, and under the circumstances of this case to show how the cars were sold by the plaintiff, whether at public or private sale, to whom sold and the selling price of each vehicle," does not lay down an inflexible rule that, in every case where there has been repossession and resale of property, before a deficiency judgment can be had by the repossessor, he must show to whom every single item of property was sold and the unit price received for each. That statement is to the effect that in *that case* under its own peculiar circumstances the repossessor was required to show to whom each automobile was sold and its sale price before an explanation of the disposition of the property and the credits allowed therefor would be reasonable and sufficient. There is no set criterion to be ap-

plied like a measuring stick in every case in determining whether an explanation of the repossession, resale, and credits given is reasonable and sufficient. Each case must be determined on its own facts and circumstances taking into consideration the nature, amount, condition, etc. of the property repossessed and resold, and the manner and method of resale and of applying credits for resale. In the *Pethel* case the bookkeeping and accounting was not as clear, unambiguous, and detailed as in the instant case. There the various credits were not explained, and without explanation were unintelligible. There was also a discrepancy between the testimony of the plaintiff's agent and the plaintiff's books and accounting. And there was no evidence as to the manner in which the various automobiles were sold. In the instant case the plaintiff showed that 34 folding metal chairs were sold to various persons at private sales for $12.71; that 190 folding metal chairs were sold in one lot to one person at private sale for $144.74; that 75 theatre seats were sold to one person at private sale for $276.75; that the remainder of the property was sold at public outcry and bid in by the plaintiff for $500; that all the property was advertised for sale, and the theatre seats were sold as a result of advertising; and that the defendant had notice of the public sale. The plaintiff also showed how these credits were applied to the defendant's account and showed an itemization of the expense of repossession. The plaintiff's evidence showed that the prices received for the property sold were fair and reasonable, taking into account the condition and nature of the property. This evidence was uncontradicted. Therefore, a clear distinction is shown in the conditions and circumstances between the instant case and the *Pethel* case. Without reviewing the evidence in detail, we can say that it showed a reasonable explanation of the disposition of the property after repossession, and in the absence of controverting evidence as to the value of the property, or a showing by the defendant raising an inference that the credits as testified to by the plaintiff's witnesses were disproportionate to the real value of the property, we cannot say as a matter of law that the evidence did not make out a prima facie case.

It is further contended that the testimony of the plaintiff's witness, Russell Magee, respecting two of the sales of the property was without probative value because it was hearsay. In each of these instances it appeared that Magee, who was an officer of

the plaintiff company, did not actually make the sales about which he testified, but it does not affirmatively appear that he was not present when the sales were made or that his testimony with regard to them was based on other than his own knowledge. Under such circumstances, we cannot say, as a matter of law that his testimony in this regard was without probative value. See *Jones* v. *Universal C. I. T. Credit Corp.*, 88 *Ga. App.* 24, 27 (6) (75 S. E. 2d 822). It is further contended in this connection that the failure of the plaintiff to produce witnesses who could testify in a more direct way as to the transactions involved raised a presumption that the testimony of such absent witnesses, if they had been produced, would have been unfavorable to the plaintiff. While we do not deny the correctness of this rule, it has been held that this presumption is not one of law, but one of fact to be passed upon by the trior of the facts under proper instructions from the trial court (*Shiver & Barnett* v. *Firemens Ins. Co.*, 60 *Ga. App.* 57, 59, 2 S. E. 2d 760); and where as here the trial judge sat both as judge and jury, it was for him to pass upon the question of whether the failure of the plaintiff to produce witnesses raised such a presumption and whether such presumption had been overcome.

The evidence sufficiently shows what property was sold at the public sale before the courthouse door on November 20, 1950, in that it shows that all of the property embodied in the bill of sale to the plaintiff was repossessed, that certain items were sold at private sale prior to the public sale, and that the remaining property that had not been so disposed of was sold at the public sale. Such sale was not a judicial sale but was a public sale under the terms of the contract between the plaintiff and the defendant, and the incidental fact that a marshal of the Civil Court of Fulton County conducted the sale and was paid therefor would not vitiate it as such.

The plaintiff in error contends that the evidence of the defendant demanded a finding that there had been an accord and satisfaction in the matter, and that this was accomplished by the return of the property by the defendant to the plaintiff and by certain statements of the plaintiff's agent, Mr. Anderson, made to the defendant after the return and resale of the property. These statements were to the effect that the defendant need not be concerned with the efforts of the plaintiff to recover any defi-

ciency from the defendant after the resale of the property, that the plaintiff had possession of the property, and that that was all it wanted. The evidence of the plaintiff, including the documentary evidence was sufficient to authorize a finding that the repossession of the property by the plaintiff was under and by virtue of the contract of sale and not in derogation thereof. The evidence did not demand a finding in favor of the defendant on this issue. Even if the evidence of the defendant shows that such a promise was made by the plaintiff's president, it was not effective to constitute an accord and satisfaction, because it was entirely devoid of consideration from the defendant and was not made prior to repossession and for the purpose of obtaining possession of the property. See *Scott* v. *Imperial Hotel Co.*, 75 *Ga. App.* 91, 97 (5) (42 S. E. 2d 179). Neither does the defendant's evidence show in this connection a rescission of the contract of sale by the parties. The defendant did not deny that the repossession by the plaintiff was under the contract, but merely contended that, after repossession of the property, the plaintiff voluntarily agreed to let the property stand for the balance owed by the defendant under the contract. The evidence as to this agreement by the plaintiff's agent and servant shows that such statements were made after the property had been repossessed and resold by the plaintiff for the account of the defendant and at a time when the amount of the deficiency resulting from such repossession and resale had been ascertained and when the plaintiff was attempting to enforce collection of such deficiency under the terms of the contract. Such evidence is not sufficient to show a rescission of the contract. The case of *Flatauer* v. *Goodman*, 84 *Ga. App.* 881 (67 S. E. 2d 794), relied on by the defendant, is not in point, therefore, and does not require a ruling different from that now made.

The evidence authorized the judgment for the plaintiff, the amount of the judgment was within the range of the evidence, and the trial judge did not err in denying the motion for new trial.

*Judgment of affirmance adhered to on rehearing, and the foregoing opinion is substituted in lieu of the original opinion. Sutton, C. J., and Felton, J., concur.*