BOOKWALTER and others *v.* CLARK and others.

*(Circuit Court, W. D. Wisconsin.* January 21, 1882.)

1. CONTRACT—MEASURE OF DAMAGES FOR BREACH OF.

 Defendants ordered plaintiffs to manufacture a certain water-wheel, to be shipped to them by a certain date, agreeing to pay for the same in money and notes. Plaintiffs fulfilled their contract and tendered delivery, but defendants refused to receive the goods or pay for them, they having had the opportunity to inspect them, and making no point that the goods were not perfect. *Held*, that plaintiffs are entitled to recover, as their true measure of damages for non-fulfilment, the contract price of the article, though no title had passed.

In Chancery.

BUNN, D. J. This case was tried before the court without a jury, a jury having been waived by the consent of parties in open court. There is no dispute about the facts. On December 17, 1880, defendants made an order in writing upon the plaintiffs, signed by them, which was delivered to and accepted by the plaintiffs, as follows:

"WAUSAU, WISCONSIN, December 17, 1880.

"*James Laffel & Co., Springfield, Ohio:* You will please manufacture and ship to the undersigned, at Wausau, Wisconsin, Marathon county, one of your 66-inch Leffel water-wheels, running with saw. Bore top half of coupling 5⅞. Wheel to be shipped by the fifteenth day of February, 1881. To drive gang-mill situated in Wausau, Wisconsin, and displaces ———— wheel under 10 feet head and fall.

"In consideration of which the undersigned agree to pay, with exchange, besides freight from manufactory, the sum of $950; $300 cash, balance in good notes, drawing 7 per cent. interest, payable in six and nine months from date of shipment. After the wheel has run 30 days, they want privilege of taking up notes at a discount of 3 per cent.

[Signed]    "CLARK, IRELAND & Co., Wausau, Wisconsin."

This order was, on the day of its date, delivered by defendants to D. J. Murray, residing at Wausau, who was acting as local agent of plaintiffs in taking orders for plaintiffs for the manufacture of machinery, and forwarded by him on the next day to the plaintiffs, at Springfield, Ohio, who received it by due course of mail, on December 20th, and on that day or the next proceeded to manufacture the wheel, which they completed according to contract in about 12 or 15 days from the receipt of the order, and on the thirteenth of January shipped it to the defendants, at Wausau, according to the directions in the order, notifying defendants of its shipment, and enclosing blank notes for them to sign and return. The wheel reached the railroad depot in Wausau by due course of freight, when the defendants saw and had a chance to inspect the same; but they refused to receive the wheel or to pay the purchase price. This action is brought, setting forth all the facts, to recover the amount of the contract price of the machinery, either as upon a sale and delivery of the goods manufactured, or as damages for non-performance of the contract on defendants' part.

Defendant John Clark testifies that about December 20th he went to the agent, Murray, who had taken the order, and told him that he was negotiating with C. P. Hazleton for a second-hand wheel, and wanted him to hold on to the order, and told Murray to write to plaintiffs at Springfield to delay the manufacture. On December 30th Murray wrote as follows to plaintiffs:

"WAUSAU, WISCONSIN, December 30, 1880.

"GENTS: Messrs. Clark, Ireland & Co. came here and requested me to write you and say they think some of purchasing a second-hand wheel, and would ask you to hold on with the order for the 66-inch wheel. You had better write them. The matter is in your hands.

"Yours, truly,    D. J. MURRAY."

This letter was received by the plaintiffs at Springfield on January 3d, and an answer by letter returned by them on that day to defendants stating that they were not willing, under the circumstances, that defendants should purchase anything but the Leffel wheel, and that they were not disposed to give up a contract upon which they had already done considerable work; that they expected to complete and ship their wheel at the time agreed in the contract. The wheel at this time was in course of manufacture, and about half done. This letter was received by the defendants at Wausau on January 5th, and on that day they wrote themselves to the plaintiffs as follows:

"WAUSAU, WISCONSIN, January 5, 1881.

"*James Leffel & Co., Springfield, Ohio*—SIRS: Yours of the 3d received. We ordered through Mr. Murray, your agent, a wheel, and a day or two after we told him to notify you to hold on with the order, as we were not positive we wanted it. You sold C. P. Hazeltine & Co. a wheel of that size and kind which he designs to take out, and use steam instead, and we have been negotiating with them for the wheel, pinions, core-wheel, and shafting; and, if he finally concludes to put in steam, we shall buy of him, and do not want your wheel; and, if he does not make the contemplated change, we want the wheel of you. If you want to deal that way, all right; if not, you can consider the order countermanded now, and we will take our chances of getting a wheel that will suit as well as yours. The wheel Mr. Hazeltine has got is your make of wheel, and if he does not want to use it you had not ought to stop his selling it by crowding. Will let you know within 10 days the result of trade with Hazeltine.

"Yours, respectfully, CLARK, IRELAND & Co."

When this letter was received by the plaintiffs, on January 8th, the wheel was nearly completed.

The plaintiffs' testimony shows that this wheel was unusually large, and they did not keep such in stock, and only made them to order; that 44-inch wheels were as large as they kept in stock, and that it was only occasionally that they had an order for so large a one as this; that it consisted of some 20 large castings and a great many small pieces, and that it would ordinarily require considerable change to fit another customer if they found one wanting so large a one; that some of the wheels ran with and some against the saw, and that a wheel made to run with the saw could not be made to fit with machinery that was intended for the other kind.

The defendants had ample opportunity to inspect the machinery at Wausau, and there is no point made that it is not manufactured in all respects and shipped according to the contract. It is admitted

also that defendants have broken their own contract *in toto;* but they insist that the plaintiffs are not entitled to recover the full value of the machinery, but only the difference between the contract price and market price, leaving the wheel for plaintiffs to dispose of as best they may, and that they are not entitled to recover at all in this suit.

But whether or not that rule be more properly applicable in cases of stocks or ordinary merchandise already in existence when the contract is made, and which has some certain market value, it seems quite clear to me that it is not the one which metes out the most exact justice between the contracting parties in a case of this kind, or which is best sustained by reason or authority.

In the first class of cases the authorities are decided; some holding, as in *Thorndike* v. *Locke,* 98 Mass. —, and *Pearson* v. *Mason,* 120 Mass. 53, that the vendor of the goods, upon tender made of delivery and refusal to receive, may leave the goods with the vendee, or with some person for him, and recover the contract price; or that he may keep the goods and recover as damages the difference between the contract price and the market value at the time of the breach; or that he may resell the goods and charge his vendee with the difference between the selling and contract price; while other cases, as in *Gordon* v. *Norris,* 49 N. H. 376, confine the vendor to the last two remedies named, and deny him the first, on the ground that, the defendant refusing to accept, no title passes and the vendors cannot have the goods and their value.

But where a person orders an article to be manufactured according to a certain measure, pattern, or style, as a suit of clothes, or a carriage, or a steam-engine, here, I think, the weight of authority and the best reason concur that the manufacturer, after he has completed his contract and tendered the article, is entitled to recover the contract price.

The reason for the distinction is that in such a case there is presumably no certain market value for goods made according to such a specific order, and that the manufacturer having done all that is required of him to do to entitle him to the full benefit of his contract, he cannot, with any certainty, have this full benefit in any other way. If he was required to resell an article of this kind before he could maintain his action, he might be compelled to wait until the vendee should become irresponsible, and the article might have no market value, or no appreciable value at all, for any other person

except the one ordering.   In such a case it seems more just and equitable that the loss and inconvenience of having a cumbrous article like the one in suit on hand for sale, and taking the chances of finding a purchaser, should fall upon the party who is in fault in not fulfilling his contract, rather than upon the party who is in no fault, and is claiming nothing but just what the other party has agreed to do.

It may be that if the defendants had countermanded the order before any work had been done, and especially if they had also tendered to the plaintiffs the fair profits of the manufacture, that it would have been the duty of the plaintiffs to have desisted from going on with the work.   But when the letter from Mr. Murray was received the work was in progress and about half completed; besides the defendants did not remand their order, nor in any way attempt to rescind their contract, but simply requested the plaintiffs to delay the manufacture until they could have time to see if they could consummate a trade with another party to better advantage.   If they could not, they still wanted the wheel.   It is evident that the plaintiffs were not bound to delay the manufacture for such a purpose.   If it takes two to make a contract, it also takes two to rescind or modify one.   I think the plaintiffs were justified in continuing the work, and shipping the wheel according to the terms of the contract.

Many of the cases on this subject turn upon a mere question of pleading; or whether, where there is no delivery and no title passes, the vendor can maintain *assumpsit* for the purchase price *as upon a sale.*   There is no question of that kind here.   The facts are all set up, and the plaintiffs are entitled to such relief as the facts seem to justify, whether it be a judgment for the purchase price, as in *assumpsit,* or for damages for a non-fulfilment of the contract on defendants' part.   And the case does not turn in my judgment upon the question as to whether the title to the goods has passed from plaintiffs to defendants.   If the plaintiffs have fulfilled their contract, and delivered or tendered delivery, this is all they can do; and if defendants refuse to accept the goods, and being made to order, they are, presumably, not marketable, I think the plaintiffs are entitled to recover, as their true measure of damages for non-fulfilment, the contract price of the article, though it be conceded that no title has passed.   The title, I think, in such cases would pass upon the rendition of judgment.

But is it clear that no title has passed?   It is shown that the wheel was manufactured and shipped on board the cars at Springfield accord-

ing to the contract. This was all the plaintiffs could do, and it seems to be the delivery contemplated by the parties; and as further confirmation of this, they provide for interest on the notes from the day of shipment at Springfield. Undoubtedly the defendants had the right to inspect the goods upon their arrival at Wausau, and upon such inspection, if they found them not in compliance with contract, they would not be bound to pay for them. But, as the case stands, it is just the same as if defendants had inspected them, and found them in compliance. They had the opportunity to inspect them, and they make no point that the goods are not perfect, but only that they had changed or might change their minds about wanting them, and had notified the plaintiffs to withhold the manufacture until further orders. The general rule is in such cases that no title passes until the goods are manufactured and delivered, *or are ready for delivery.* These were certainly ready for delivery, and I think it not at all clear that they were not delivered when shipped at Springfield, subject only to defendants' right of inspection and rejection of the goods at Wausau, in case they should be found not to comply with the contract. However this may be, I think the plaintiffs entitled to recover the contract price of the goods, with interest at 7 per cent. from the time of shipment. *Bement* v. *Smith,* 15 Wend. 493; *Ballentine* v. *Robinson,* 46 Pa. 177; *Shawhan* v. *Vanpest,* 15 Am. Law Reg. (N. S.) 153.

In this last case, which was recently decided by the supreme court of Ohio, the authorities are so fully and ably reviewed that no further discussion of them seems necessary.