## 2766.  CASTLEN *v.* MARSHBURN.

1. No material error of law appears, and the evidence amply supports the
verdict.
2. A parol contract is enforceable though it be one which the statute of
frauds requires to be in writing, where the evidence shows that it has
been fully executed by one party, or there has been such part perform-
ance by one party as would render it a fraud for the other not to com-
ply.
3. In a contract of sale where the seller has fulfilled his part of the con-
tract and delivered the goods to the purchaser or his designated agent,
this is all he can do; and if the purchaser refuses to accept the goods
from this designated agent, the seller is entitled to recover, as his true
measure of damages for non-fulfillment, the contract price of the goods,
where there is a price agreed upon, or, where there is no agreed price,
the market value of the goods where delivery is made.  And in such
case the seller may, if he choose, abandon the goods, and leave them in
the hands of the carrier (the designated agent in this case being a
carrier), and the rights of the vendor are not affected by the fact that
the carrier subsequently sells the goods for freight and demurrage.
This the carrier had the right to do, and the purchaser should expect, as
one of the results of the breach of his contract.

                        DECIDED NOVEMBER 11, 1910.

Action on contract; from city court of LaGrange—Judge Har-
well.  May 27, 1910.

*Hatton Lovejoy, H. E. Chambliss,* for plaintiff.

*A. H. Thompson,* for defendant.

HILL, C. J.  Castlen sued Marshburn in the city court of La-
Grange, for $209.28, the alleged value of 1,308 peach crates sold
and shipped to the defendant by the plaintiff.  The jury found a

verdict for the plaintiff, and the defendant's motion for a new trial was granted. The plaintiff assigns error in the judgment granting this new trial. There was little conflict in the evidence, and the following are substantially the facts: The defendant, at Stone Mountain, Georgia, called up by telephone Haygood Brothers at Culloden, Georgia, and one of the firm answered the call. Marshburn wanted to buy from the firm some peach crates, and Haygood told him that he had none to sell, but that Castlen did have peach crates to sell and Marshburn could speak to him. Marshburn then asked Haygood to call Castlen to the telephone; which Haygood did, putting into Castlen's hand the receiver. Marshburn told Castlen over the telephone that he was N. E. Marshburn, at Stone Mountain, Georgia, and Castlen told Marshburn who he was. They had some difficulty in making each other understand the conversation over the telephone, and they both requested the operator to repeat to each what was said by the other. The operator thereupon repeated to Castlen at Culloden the exact message that Marshburn told her to repeat, to wit, that he, Marshburn, wanted some peach crates, and wanted them shipped over the Southern Railway; and the operator then repeated to Marshburn the statement of Castlen that he had the peach crates that Marshburn wanted, and would ship them according to his directions. The operator thought that she was repeating a conversation between Marshburn and one of the Haygood Brothers, but the evidence shows that the conversation which she did repeat was between Marshburn and Castlen, whom Haygood had called to the telephone to receive the message from Marshburn. In compliance with this parol contract Castlen immediately shipped by the first train the peach crates which Marshburn had ordered. Upon their arrival at Stone Mountain in due course of transportation, Marshburn refused to accept them. In further proof of the parol contract made between Marshburn and Castlen, there was evidence that Marshburn, or some one acting in his name, confirmed the order from Marshburn to Castlen, through the medium of the operator, and there was also evidence that Marshburn admitted giving the order for the peach crates, and their reception at Stone Mountain. The evidence further shows that Castlen was directed by Marshburn to attach a sight draft for the value of the peach crates to the bill of lading and forward it for collection.

This was done by Castlen, and Marshburn refused to pay the sight draft. Castlen thereupon went to Stone Mountain and made an effort to collect the amount for the crates. Failing to collect it, he brought suit against Marshburn for the value of the crates. These facts (which, in view of the verdict, must be accepted as the truth of the transaction) would seem clearly to prove that the verdict was right, unless it contravenes some principle of law. No complaint was made by Marshburn as to the quality or quantity of the peach crates, or that they were received too late. He sets up the following three defenses: (1) He denies that he ever made any contract with Castlen for the purchase of the peach crates. He states that he never ordered them from him, did not agree to order them from him, and in fact did not know Castlen at all in the transaction. (2) He sets up that the alleged contract which was the basis of the suit was not in writing, and was therefore obnoxious to section 2693 of the Civil Code of 1895, which says that "to make the following obligations binding on the promisor, the promise must be in writing, signed by the party to be charged therewith, or by some person by him lawfully authorized: . . 7. Any contract for the sale of goods, wares and merchandise in existence, or not in esse, to the amount of fifty dollars or more." (3) He sets up that there was never any delivery of the crates to him, nor any acceptance of any of the crates by himself or by any one for him.

1. The first defense is one of fact, and, as above intimated, is clearly shown by the evidence not to have been the truth. The evidence in behalf of the plaintiff clearly establishes the contract by Marshburn with Castlen for the purchase of the crates. Under the evidence it is absurdly technical to insist that the contract was made with Haygood Brothers and not with Castlen. Haygood testified that he distinctly told Marshburn over the telephone that he did not himself have any crates for sale, but that Castlen did, and that at Marshburn's request he called Castlen to the telephone; and Marshburn himself testifies that the conversation between them was carried on through the medium of the operator at their mutual request, because they could not understand each other over the telephone. In other words, the operator was thus constituted the agent of both parties for the purpose of making the contract in question. No objection was made to the testimony

of this operator giving the details of the contract made between the two. The fact that she thought that she was repeating a conversation between Marshburn and Haygood is immaterial, for she was in fact repeating a conversation between Marshburn and Castlen, which both Marshburn and Castlen understood. Therefore, the parol contract for the purchase of these crates by Marshburn from Castlen was overwhelmingly shown by this evidence; and if it needed any confirmation, it was confirmed by the evidence of the despatch signed by Marshburn and directed to Castlen, instructing him to draw a draft and attach it to the bill of lading, and by Marshburn's admission that he had ordered the crates from Castlen and that they had been received at Stone Mountain, addressed to Marshburn, although he had refused to accept them. In other words, it fully and clearly established not only the contract, but the breach of the contract by Marshburn.

2. Was the contract obnoxious to the statute of frauds as contained in sections 2693 and 2694 of the Civil Code of 1895? Although the contract was one which the law required to be in writing, it was taken out of the operation of the statute, for the reason that the plaintiff had fully performed his part of the contract. He had loaded and shipped the crates and had delivered them to the Southern Railway Company by express direction of the defendant. He had not contracted to deliver to the defendant, but was to deliver them to the Southern Railway Company for the defendant. He had done everything that he was called upon to do under the contract. The learned counsel for the defendant in error seems to rely solely upon subsection 7 of section 2693, and insists that under this section there was no delivery and acceptance of the crates by the defendant. He overlooks, however, section 2694, which explicitly declares that the statute of frauds does not extend to the following cases: "When the contract has been fully executed," and "where there has been such part performance of the contract as would render it a fraud of the party refusing to comply, if the court did not compel a performance." The general rule is that where personal property is delivered to a carrier by the seller, directed to the consignee, it is in law a delivery to the consignee. But in this case the evidence shows that the crates were not only delivered to the carrier designated by

the purchaser, and addressed to the consignee, but that they were transported to Stone Mountain, the address of the consignee, and some of them actually delivered to him, but he afterwards refused to accept them. It can not be doubted that the contract was fully performed on his part by the seller. Where the seller has complied with his part of the parol contract to ship fruit by packing the fruit ready for shipment, this will take the contract out of the statute, under § 2694, though there is evidently no delivery and acceptance under § 2693, subsection 7. *Armour* v. *Ross,* 110 *Ga.* 413 (4), (35 S. E. 787). This decision is controlling on this · point. But we think the law is clear under the statute, even without the decision. In the case of *Brunswick Grocery Co.* v. *Lamar,* 116 *Ga.* 4 (42 S. E. 366), the Supreme Court again recognizes the rule that a contract may be enforceable under § 2694 of the Civil Code, where there is no delivery and acceptance under § 2693, subsection 7. Certainly it can not be reasonably questioned that the facts prove "such part performance of the contract" by Castlen as would render it a fraud if Marshburn were not compelled to perform.

3. It is contended that there was never any delivery of the crates to the purchaser by the seller, but that on the contrary the seller retained the title to the goods in himself, as was evidenced by the fact that he drew a sight draft and attached it to the bill of lading, and that he furthermore came to Stone Mountain and abandoned the crates, leaving them in the possession of the railroad company to be sold for freight and demurrage. The purchaser, under the evidence, had directed the seller to draw a sight draft and attach it to the bill of lading, and the remedies of the seller, where the buyer refuses to accept goods, are the same whether the goods are shipped open, or sight draft with bill of lading attached. *McCord* v. *Laidley,* 87 *Ga.* 221 (13 S. E. 509) ; *Mendel* v. *Miller,* 126 *Ga.* 837 (56 S. E. 88, 7 L. R. A. (N. S.) 1184). In this case, under the evidence, the buyer refused to accept the crates without valid excuse. The vendor therefore, had the right to abandon the property, treat it as the purchaser's, and sue for the purchase price; and this is true although the property be perishable and the vendee lose the property as a result. Pollen *v.* LeRoy, 30 N. Y. 556. The New York Court of Appeals, in *Hunter v.* Wetsell, 84 N. Y. 549 (38 Am. R.

544), in a case where none of the goods bought had been delivered, but part payment had been made, and the seller offered to deliver all the goods, which the purchaser refused to accept, and the vendee sued for the purchase price, held that "although the property was perishable, this does not alter the situation. He (the vendor) was not bound to sell the hops at auction after due notice and on account of the vendee. He might have done so, but was at liberty to abandon the property, treat it as the vendee's, and sue the latter for the price." And in Benjamin on Sales, § 1018, it is declared: "The recent American doctrine, sustained by the weight of authority, gives the seller who has completed a chattel made to order, or who holds ready for delivery goods contracted for under an executory contract of sale, a choice of remedies. A vendor in such a case may, if he choose, abandon the property, treat it as the vendee's, and sue the latter for the price." It has even been held by many courts that where the purchaser refuses to accept the property, the seller may leave it with a third person and sue the purchaser for the price. In the case of Bookwalter v. Clark, 10 Fed. 793, the learned judge announces the law on this point as follows: "Where goods are made to order, the seller can recover the contract price on tender of the goods. The plaintiff is entitled to such relief as the facts seem to justify, whether it be a judgment for the purchase price as in assumpsit, or for damages for a non-fulfillment of the contract on defendant's part. If the plaintiff has fulfilled his contract and delivered, or tendered delivery, this is all he can do; and if the defendant refuses to accept the goods, I think the plaintiff is entitled to recover, as his true measure of damages for non-fulfillment, the contract price of the article." See also Bement v. Smith, 15 Wend. 493.

Here the property bought by the defendant from the plaintiff was delivered by the plaintiff to the railroad, according to defendant's directions, addressed to the defendant. The defendant refused to accept the crates or to pay for them. Under these circumstances what was the seller to do? What did he have a right to do? What did the law authorize him to do? What remedy would give him just and adequate compensation for his performance of his part of the contract? If he was required under the law, as contended by counsel for defendant, to retain the

goods and recover the difference between the contract price and the market price, he would have lost the amount of the freight from Culloden to Stone Mountain and return and all expenses, ·which, according to the evidence, amounted to $90. Had he resold the property and recovered the difference between the contract price and the price of resale, he would still have lost the freight and expenses, amounting to $90. And if he had reshipped the property to Culloden and held it and sued for the contract price, he would have lost the freight and expenses, amounting to $90. And if he had paid the freight and stored the property at Stone Mountain and sued for· the contract price, he would have lost the freight for loading and reloading and transporting to the house of storage.

The learned trial judge, in his order granting a new trial, states that under his "view of the law, the evidence does not show any such storage or retention of the crates by the vendor for the vendee as would authorize the recovery of the full purchase price of the crates." We do not agree with this view of the law, under the evidence. We think that the course adopted by the plaintiff, upon the failure of the defendant to comply with his contract and accept and pay for the crates, was fully authorized by law, and was the only remedy under which he could recover adequate compensation for the damages which he had incurred by the breach of the contract on the part of the defendant. He left the goods with the railroad company. This is not a case where the goods ordered remained in the hands of the seller unshipped, with no expense incurred, and where the order was countermanded. In that case the seller can be fairly compensated by either of the remedies provided by § 3551 of the Civil Code. Here the goods had been shipped and had arrived at their destination before they were refused. Expenses of shipping and freight charges had been incurred, and it seems to us clear that any remedy which would require the seller, under these facts, to bear the loss of freight and expenses which, under the contract, he was not to bear, would have been inadequate and unjust. In our opinion, the last remedy given to the seller under § 3551, supra, fully authorizes this suit in form and substance. As very pertinently and strongly suggested by the learned counsel for the plaintiff in error in his most excellent brief: "The seller had complied with every agree-

ment by him made; the goods were at their destination, the depot of the buyer,, in the hands of responsible parties. Under these facts, why is not the seller entitled to pay for his goods? What principle of law or justice requires that the seller do more than comply with every provision of his contract? Who has defaulted? Not the seller. If any further burden or expense is to be incurred, upon whom should it fall, upon the one strictly keeping, or the one breaking his contract?" We conclude that under every principle of law, of equity and justice, under the evidence in this case, practically undisputed on material points, the plaintiff is entitled to payment for his crates. No complaint was made either as to the quantity or quality of the goods, nor as to any delay in their delivery. The plaintiff complied with the letter of his contract. The defendant broke the letter and the spirit of his contract. Two juries of the defendant's neighbors have found that the plaintiff was entitled to be paid, although he was a stranger, and this court is of the opinion that this just verdict should be allowed to stand, and that the trial court erred in setting aside the verdict and granting another trial to the defendant.

*Judgment reversed.*