16023. PAFFORD *v.* HINSON & COMPANY.

JENKINS, P. J. 1. "When a married woman dies leaving a husband surviving her, the husband is primarily liable, and not the estate of the deceased, for the payment of her funeral expenses." The wife may by will expressly provide for the payment of such expenses from her estate, but in the absence of such a testamentary provision her estate can not be held liable for such a charge. *Kenyon* v. *Brightwell,* 120 *Ga.* 606 (3), 613 (48 S. E. 124, 1 Ann. Cas. 169).

2. Notwithstanding the rule stated above, a creditor may expressly contract with and extend credit to a third person for items of funeral expense furnished for the deceased wife of another, and in that event, where the credit is actually extended to such third person, and there has been no original or subsequent express or implied contractual relationship between the creditor and the husband, rendering him liable, the debt and liability are governed by the contract, and remain against such third person as may thus incur the same.

3. Performance by a creditor making delivery, and acceptance by the debtor of such delivery, of goods in accordance with the terms of an oral contract, required to be in writing, will take the same without the statute of frauds. Civil Code (1910), § 3223 (2, 3); *Castlen* v. *Marshburn,* 8 *Ga. App.* 400 (2), 403 (69 S. E. 317); *Alford* v. *Davis,* 21 *Ga. App.* 820 (2) (95 S. E. 313).

4. In the instant action on an open account against the husband of a deceased wife for certain items of funeral expense, the trial court directed a verdict for the plaintiff. Under the evidence, it appears that the wife was killed in a railroad wreck in which the husband was injured, and that he was unable to attend to any business prior to the funeral of the wife, and that the funeral arrangements with the plaintiff undertaker were made by a daughter and the son-in-law of the deceased. There was evidence to the effect that the son-in-law, in ordering the casket and other items, told the plaintiff that the deceased "was his mother-in-law, and that he wanted her put away in good style, and to fix·her up and mail him the bill," and he would

"pay it;" that the name of the husband was not mentioned during these arrangements; and, according to certain evidence, it appears that the first statements of account were mailed to the son-in-law as being charged to him. The defendant husband testified that he had nothing to do with ordering out the funeral items, although it appears that he knew that the plaintiff was preparing the deceased for burial and was furnishing the items. The plaintiff, on the other hand, testified that, when the debt was contracted, he "had never seen [the son-in-law] before, knew nothing about him, . . didn't extend any credit to him, . . knew [the defendant], and thought he would pay," and that he simply mailed to the son-in-law the statement of account promptly to help the defendant out. There was some evidence to the effect that the son-in-law had stated, not that he would pay the account, but that he would see that it was paid. The defendant admitted in his testimony that he had turned over $150 to his son-in-law to be applied on the account. *Held:* While the evidence authorized a verdict in favor of the plaintiff, such a finding was not demanded as a matter of law, and the question whether the son-in-law actually contracted for the items on his own account and on the faith of his individual credit, or whether, in the emergency created by the death of the wife and the temporary disability of the husband, he was merely assuming to act for the incapacitated husband in ordering out the necessary items for which the latter was legally responsible, and which were furnished and delivered without objection, should have been submitted to the jury. If the latter was the case, and in so doing the son-in-law merely sought to guarantee the payment of the debt on behalf of the husband, to whom the credit was actually extended, this would not relieve the husband of his duty to pay as imposed by law. See *Raoul* v. *Newman,* 59 *Ga.* 408, 409 (3, 4); *Green* v. *Coast Line R. Co.,* 97 *Ga.* 15, 30. (24 S. E. 814, 33 L. R. A. 806, 54 Am. St. 379); *Norton* v. *Rourke,* 130 *Ga.* 600 (61 S. E. 478, 18 L. R. A. (N. S.) 173, 124 Am. St. Rep. 187). See also *Cordray* v. *James,* 19 *Ga. App.* 156 (91 S. E. 239).

*Judgment reversed.* *Bell, J., concurs. Stephens, J., concurs specially.*

DECIDED MAY 18, 1925.

Complaint; from city court. of Brunswick—Judge Butts. October 16, 1924.

*Farr & Powell,* for plaintiff in error.

*Conyers & Wilcox,* contra.