105 So.2d 728

**LLOYD'S OF LONDON**

v.

**FIDELITY SECURITIES CORPORATION.**

I Div. 757.

Court of Appeals of Alabama.

Oct. 7, 1958.

598

Hamilton, Denniston, Butler & Reddick and Robt. R. Locklin, Mobile, for appellant.

Howell & Johnston and Irvin J. Langford, Mobile, for appellee.

CATES, Judge.

This appeal comes from a nonjury trial in the Mobile Circuit Court with judgment against Lloyd's of London for $495.58.

The action is on a "nonrecording" policy,[1] wherein certain underwriters at Lloyd's (appellant) undertook to indemnify Fidelity (appellee) against "any loss direct" which it might sustain "only insofar as [Fidelity would be] damaged through being prevented from" (a) obtaining possession, or (b) enforcing its rights (or both) with respect to property covered by a chattel mortgage or a conditional sales contract *"solely as the result of the failure* of [Fidelity] duly to record the Instrument with the proper Public Officer." (Italics supplied.) The plaintiff claimed a

loss of $500 because of its failure to record a paper on a 1949 Ford automobile.

Lloyd's filed two pleas: (a) denial of Fidelity's allegations; and (b) "that the instrument purchased by the Plaintiff * * was and is a Chattel Mortgage, * * * that the alleged damage suffered by the Plaintiff, if any there was, did not result from its being prevented from obtaining possession * * * solely as the result of the failure * * * duly to record * * * with the proper Public Officer * * *"

There was a stipulation. On the issues of notice to the underwriters and the authority of B. F. Adams Company, as agents of the underwriters, oral testimony was taken in court.

The stipulated chronological sequence runs:

1.) July 16, 1953, Robert L. Jefferson gave a note due and payable the next day to Government Employees Insurance Company.

2.) November 27, 1953, Jefferson bought a 1949 Ford from Acme Motor Company for a total "time price" of $946.-36, $235 cash "on or before delivery" and with a "deferred balance" of $711.36, payable in eighteen monthly installments of $39.52 each, beginning January 2, 1954, the payment of the price being secured by an instrument labeled "Conditional Sales Contract";

3.) December 23, 1953, Government Employees sued Jefferson on his note and on February 16, 1954, got judgment for $925.90;

4.) February 23, 1954, Government Employees recorded a certificate of said judgment in the probate office;

5.) June 2, 1954, Government Employees had execution issued;

6.) August 11, 1954, the sheriff, under said writ, levied on the car;

---

1. See American Aviation & General Ins. Co. v. Georgia Telco Credit Union, 5 Cir., 223 F.2d 206, 51 A.L.R.2d 316; Couch on Insurance, § 1287–2 (Cum.Supp.); Appelman, Insurance, § 5246 (Cum.Supp. n. 60.5).

7.) August 12, 1954, Fidelity learned of the levy and notified B. F. Adams Company thereof that same day;

8.) September 23, 1954, Fidelity filed with Adams a "filled in" claims form which Adams had furnished it;

9.) September 24, 1954, the attorneys for Lloyd's wrote Adams denying liability and requested that Adams so notify Fidelity.

10.) September 29, 1954, a bona fide buyer "for value without notice of the claim of Fidelity" bought said car at a sale held by the sheriff under said levy. At the time of the sheriff's sale, the car was worth $434.72, and no one "from or for Fidelity" attended said sale or proclaimed "what interest Fidelity * * * had in the said automobile."

Fidelity has filed two motions to dismiss this appeal. The first motion is on grounds of Lloyd's filing the transcripts of evidence and of the record proper too late in the circuit court and in this court, respectively.

There was no motion in the circuit court for a new trial. This being a civil case, the statute as to taking appeals quoted in McDaniel v. State, Ala.App., 96 So.2d 319, does not apply. The corresponding statute for civil cases is in Code 1940, T. 7, § 766, which reads in pertinent part:

"Any appeal taken * * * shall be shown in the following manner: * * * (b) By giving security for the costs of the appeal to be approved by the clerk * * *."

Thereafter, under § 768, the clerk begins preparation of the transcript of the "record" which includes the original of the transcript of the "evidence" if filed, Code, P.P.Supp., T. 7, § 827(1b).

Judgment came February 8, 1957. "Notice of appeal" with waiver of citation was filed August 2, which was also the date on which security for costs was filed with the circuit clerk.

■ The filing of this security dates the appeal as taken on August 2, 1957, § 766(b), supra; Danley v. Danley, 263 Ala. 390, 82 So.2d 534.

The circumstance that seems to have prompted Fidelity to move to dismiss was the fact that the transcript of the testimony (or "evidence") was "filed" by the court reporter (with notice to counsel thereof) with the circuit clerk on May 16, 1957.

On August 2, 1957, the circuit clerk endorsed this transcript "Refiled August 2nd 1957." This endorsement Fidelity contends was surplusage and hence a nullity.

However, from a reading of the various statutes consequent upon the abolition of bills of exception at law, as here (P.P.Supp., and 1957 Noncum.Supp., Code 1940, T. 7, § 827(1), et seq.), together with T. 7, § 769, it is clear that the court reporter's filing of a transcript of testimony with the clerk of the trial court is not contemplated by law except in the event of an appeal. If a lawyer wants one for motion for new trial that is a private matter between him and the reporter.

The reporter is entitled to be assured of his fee under the statute, § 827(2), supra; and, moreover, he is not required to commence transcription until the appeal has been perfected and unless he has been notified to transcribe within five days of appeal, § 827(1), second sentence. See Wheeler v. Alabama National Bank of Montgomery, 262 Ala. 36, 76 So.2d 679.

■ The appeal being August 2, 1957, the "filing" or depositing of the transcribed testimony at an earlier date was a matter neither required nor regulated by statute or court rule, and, accordingly, should not begin the running of the period to get the record to the appellate court under

revised Appellate Rule 37, Code 1940, Tit. 7 Appendix (263 Ala. xxi). We find no conflict with Bates v. Rentz, 262 Ala. 681, 81 So.2d 349. The motion is overruled.

Fidelity has, for alleged deficiencies in the assignments of error, also alternatively moved to strike Lloyd's assignments and to dismiss.

The first assignment reads:

"The Court erred in its judgment of February 8, 1957 (Transcript pages 5 and 6) in ordering and adjudging that the Plaintiff have and recover of the Defendant the sum of Four Hundred Ninety-five and 58/100 Dollars ($495.-58), the amount of damages as so assessed by the Court, and all court costs in this cause created."

■ Fidelity claims this is too general a specification. However, in Morgan Plan Co. v. Accounts Supervision Co., 34 Ala. App. 457, 41 So.2d 424 (also a nonjury case), we held such an assignment is good *to raise the sufficiency of the evidence.*

■ As to assignments 2, 3, 4, and 5, Fidelity says Lloyd's is barred to question the sufficiency of the evidence because a new trial was not moved for below. A motion for a new trial is not a condition precedent to appellate review as to whether or not the plaintiff's evidence makes out a scintilla. See Code 1940, T. 7, § 260 (second and third sentences); Browne v. Giger, 221 Ala. 176, 128 So. 174.

■ The sixth assignment, based on the failure of complaint to state a cause of·action, is available even though no demurrer was made to the complaint. Louisville & N. R. Co. v. Williams, 113 Ala. 402, 21 So. 938; Chandler v. Price, 244 Ala. 667, 15 So.2d 462; Birmingham Electric Co. v. Echols, 33 Ala.App. 234, 32 So.2d 374.

■ Fidelity says the seventh assignment, relating to admission of testimony after objection, is bad because no exception was taken at the time of the trial court's ruling on Lloyd's objection. Act No. 44, approved April 1, 1955 (1955 Acts p. 150), pertinently provides:

"Exceptions to rulings or any order or orders of the court are unnecessary and * * * it is sufficient that a party, at the time the ruling or order * * * is made or sought, makes known to the court the action which he desires * * * or his objection to the action of the court and the grounds * * *."

This new statute also applies to the eighth assignment.

■ In view of the remittitur provisions of Code 1940, T. 7, § 811, a motion for new trial is not required as a prelude to an appeal because of an excessive award of damages, where the judge has, as here, fixed the amount, City of Anniston v. Douglas, 250 Ala. 367, 34 So.2d 467.

The foregoing discussion fits the other grounds of Fidelity's motion to strike the assignments of error. We deny the motion and proceed to consider the cause on the merits.

The insuring agreement is not of a broad form (e. g., Cook v. Continental Ins. Co., 220 Ala. 162, 124 So. 239, 65 A.L.R. 921) with exclusions operating to restrict the scope of a risk expressed in general terms: on the contrary, the risk here lies in Fidelity's being prevented from obtaining possession or enforcing its rights *solely* because it failed to record.

■ With respect to third parties, without actual notice, recording confers on a chattel mortgage attributes different from those attending a recorded conditional sales contract.

Code 1940, T. 47, § 123, reads in part:

"Conveyances of personal property to secure debts, * * * are inoperative against *creditors* * * * with-

out notice, *until* recorded, * * *." (Italics supplied.)

Section 131 (ib.) reads pertinently:

"All other contracts for the conditional sale of personal property, by the terms of which the vendor retains the title until payment of the purchase money and the purchaser obtains possession of the property, * * * are, as to such condition void against * * * *judgment creditors* without notice thereof, *unless* such contracts are in writing and recorded * * *." (Italics supplied.)

 Alabama nominally classifies itself as a "title" state, i. e., a mortgage passes title to the mortgagee. Hence, the necessity for our defeasance statute:

"The payment of the mortgage debt, whether the mortgage is of real or personal property, divests the title passing by the mortgage." Code 1940, T. 47, § 181.

See also Maxwell v. Moore, 95 Ala. 166, 10 So. 444.

 "Creditors" as used in § 123, supra, are those subsequent to the conveyance, Birmingham News Co. v. Barron G. Collier, Inc., 212 Ala. 655, 103 So. 839; Choctaw Bank v. Dearmon, 223 Ala. 144, 134 So. 648 (dictum). Moreover, the purchase money theory of priority applies in the case of chattels, Blackman v. Engram, 214 Ala. 262, 107 So. 741; Ex parte Scharnagel, 223 Ala. 4, 136 So. 834 (dictum).

If the instant instrument were a conditional sales contract, then, under the analogy of the Supreme Court's construction of the real property recording statute, Code 1940, T. 47, § 120, which also applies (inter alios) to "judgment creditors," Government Employees' judgment took precedence over Fidelity's unrecorded paper, Wiggins v. Stewart Bros., 215 Ala. 9, 109 So. 101; W. T. Rawleigh Co. v. Barnette, 253 Ala. 433, 44 So.2d 585, 587 (dictum—headnote 5):

"* * * it matters not * * * when the debt was contracted * * * [if] the judgment was rendered before the prior deed was recorded * * *."

In Aetna Auto Finance v. Kirby, 240 Ala. 228, 198 So. 356, a recorded judgment took precedence over an unrecorded conditional sales contract.

 However, based on Bern v. Rosen, 259 Ala. 292, 66 So.2d 711 (affirming 36 Ala.App. 296, 55 So.2d 361, with modification as to T. 57, § 28—risk of loss)—see also Burroughs Adding Machine Co. v. Wieselberg, 230 Mich. 15, 203 N.W. 160— we consider the instrument here in question is not a conditional sales contract within the contemplation of § 131, supra, but a chattel mortgage within the meaning of § 123, and being a purchase money mortgage, the property conveyed to Fidelity was not subject to levy under Code 1940, T. 7, § 519.

A vicarious lien (for a fieri facias under § 521) is established by our certificate of judgment registration act—T. 7, §§ 584 and 585—" on all property of the defendant, [*but only on that*] *which is subject to levy and sale* under execution," thus incorporating the definition of property so subject as employed in § 519, supra. (Italics and bracketed matter added.) See Decatur Charcoal Chemical Works v. Moses, 89 Ala. 538, 7 .So. 637.

As between the parties, the principle of freedom of contract permits the widest of latitude in the expression of their bargain between buyer and seller or borrower and lender, e. g., Campbell Motor Co. v. Spencer, 22 Ala.App. 465, 116 So. 892; Drennen Motor Car Co. v. Welded Products Co., 20 Ala.App. 382, 102 So. 600; Smith v. Lewis, 212 Ala. 133, 102 So. 21.

When, however, the agreement impinges on areas of public policy or of statutory pre-emption, such as usury, fraudulent conveyances, recording acts, priorities and bankruptcy, it becomes necessary at times to distinguish between a title retention or conditional sales contract and a chattel

mortgage, e. g., Ballard v. First National Bank of Birmingham, 261 Ala. 594, 75 So. 2d 484; Daniel v. First National Bank of Birmingham, 5 Cir., 227 F.2d 353; Id., 5 Cir., 228 F.2d 803; First National Bank of Birmingham v. Daniel, 5 Cir., 239 F.2d 801; Bern v. Rosen, supra; McKay v. Trusco Finance Co. of Montgomery, 5 Cir., 198 F.2d 431.

Jones, Chattel Mortgages and Conditional Sales (Bowers Ed.), at § 933, calls such ambivalent judicial treatment "to 'ride with the hunter and run with the hounds.' A particular contract is either conditional sale or it is not." Cf. National Cash Register Co. v. Paul, 213 Mich. 609, 182 N.W. 44, 17 A.L.R. 1416.

On the other hand, in Glenn, Fraudulent Conveyances and Preferences (Rev.Ed.), § 503, the author [2] writes:

"Title theory or lien theory to the contrary notwithstanding, the underlying rule is that an unrecorded chattel mortgage is nothing as against the mortgagor's creditors. It is the recording that gives it life. * * *

" * * * We should say, or rather our courts should say for us, that a chattel mortgage is inconceivable unless a statute says otherwise; and hence the life and well being of this security depend upon strict conformity with the recording acts, without which, indeed, the 'mortgage' would be nothing."

The provisions [3] for acceleration of all future payments upon default and for repossession, foreclosure sale and a residue for Jefferson, or a deficiency for Fidelity with respect to the relation of the sale proceeds to the unpaid aggregate payments, have the earmarks of an evidence of debt rather than of an installment sale. Jones, supra, § 946; Glenn, supra, § 513.

The sheriff's sale could have been confined to Jefferson's equity of redemption (T. 7, § 519), and hence the loss was due to Fidelity's failure to claim the property. There was no insuring agreement to furnish legal assistance (if there can be such, except in a defense subsidiary to an underwriter's liability or supposed liability), and, therefore, Fidelity should have interposed its claim under Code 1940, T. 7, §§ 1168 et seq.

2. Glenn's discussion is built around the text of the Uniform Chattel Mortgage Act which would be merged into the proposed Uniform Commercial Code. 1943 Proceedings, Commissioners Uniform State Laws, pp. 67, 68, and 149. Glenn, § 495, n. 33a, takes note that T. 47, § 123, constitutes constructive notice to subsequent creditors only.

3. "7. Time is of the essence of this agreement and if the purchaser defaults in complying with any of the terms of this contract or the holder of this contract deems the property in danger of misuse or confiscation, or if the purchaser defaults or fails to pay any note or installment when due, or if the automobile is damaged, stolen or destroyed, or if any insurance company should cancel or give notice of intent to cancel any policy of insurance on said vehicle, or if execution, attachment or other writ be levied on any of purchaser's property, or if a petition under the Bankruptcy Act be filed against or on behalf of the purchaser, or if for any reason the holder hereof deems itself or the vehicle insecure, the full amount of the purchase price then unpaid shall become immediately due and payable at holder's option, * * * or said car may be sold at private or public sale without being at the place of sale, and with or without notice to the Purchaser, and Seller shall have the right at any sale to purchase said car the same as any other persons, and all laws governing such sale are hereby waived by Purchaser. Such private or public sale may be held before any judgment in any repossession suit. The proceeds of any sale, after deducting expense, liens, storage and an attorney's fee paid or incurred by the Seller, shall be applied to the amount due on said note and the surplus, if any, shall be paid to Purchaser; and in case of a deficiency, Purchaser covenants to pay forthwith the amount thereof to the holder of said note, together with a reasonable attorney's fee in the event the collection of said deficiency be placed with an attorney. As to any debt provided or secured by this contract the purchaser waives all rights of exemption under the Constitution and laws of the State."

Lloyd's second plea was supported by the evidence, and hence the judgment below is due to be

Reversed and remanded.

