135 So.2d 171

## S. A. MARTIN

v.

## HOUSE OF CARPETS, INC.

1 Div. 882.

Court of Appeals of Alabama.

Nov. 21, 1961.

John M. Coxwell, Monroeville, for appellant.

Windell C. Owens, Monroeville, for appellee.

PRICE, Judge.

This suit is by appellee against appellant for damages for breach of a contract of purchase of certain carpet material, the agreed purchase price of which was $1,500, which defendant was alleged to have refused to accept and pay for. The cause was tried before the court without a jury, resulting in a judgment in favor of the plaintiff in the sum of $500. Defendant appeals.

On July 8, 1960, the defendant, S. A. Martin, gave the House of Carpets, Incorporated, a written order for the purchase of 123⅘ square yards of Barbizon all wool carpet material.

On July 25, 1960, defendant was notified by letter that the carpet "is now in our warehouse and ready for installation." The same letter was returned to plaintiff with the following notation on the bottom: "Due to the fact that the carpets were going to run into so much money, we have decided not to use the carpets. Yours, truly, S. A. Martin."

The carpets were to be delivered from Mobile to Monroeville and be installed in defendant's new home. The contract price of $1,500 included the cost of carpet material, padding, installing, and also the cutting and installing of a carpet already owned by defendant.

Plaintiff's employee Hornkohl testified that at defendant's request he made a trip to Monroeville and took measurements of plaintiff's rooms. He stated the carpet material in the sizes and colors necessary to fulfill the contract was not carried in stock by plaintiff, but had to be ordered in a special cut from a firm in Georgia.

Mr. Bill Wersham, the president of the House of Carpets, Incorporated, testified that after Mr. Martin's refusal to accept the carpets he had sold a part of the order for the sum of $446.25, and that about 55 yards of the material still undisposed of might bring $175, enabling the plaintiff to realize approximately $621.25 from the $1,500 order, leaving a loss to plaintiff of $878.25. On cross-examination the witness stated that installation charges of about $1 per square yard, and padding for underneath the carpet at $1 per square yard were included in the contract price of $1,500.

On cross-examination this witness stated that he was charging defendant about $7.50 a square yard for the carpet, $1.50 per square yard for pad and $1 per square yard for labor. The cost to plaintiff of the

carpet was about $6.25 per square yard. He also explained hat he received $446.25 for the piece of carpet he had sold, less $85 for the padding and labor involved in that transaction, which would make $361.25 received for the carpet itself; that he considered the 55 yards of the material still unsold as having practically no value, since he had shown it at a ridiculously low price but no one was interested in buying it.

The defendant, S. A. Martin, testified he was informed by plaintiff's employee, Mr. Hornkohl, that carpeting of the colors and width selected by him are usually carried in stock by plaintiff, but because of a run on this kind of carpet they were temporarily out of it. Mr. Hornkohl told him they would bring the carpet to his home in rolls and lay it from those rolls.

Defendant's witness, J. P. Wiggins, testified he sells carpeting and is familiar with that business; that carpeting comes in rolls 9, 12, and 15 feet wide and can be bought in any desired length.

Mr. Hornkohl, recalled as a witness, denied that he had told Mr. Martin that carpeting of the quality and in the colors ordered by him was usually kept in stock, and stated that only the amount required for Mr. Martin's needs was ordered from the mill.

The appellant claims that the court erred in awarding the plaintiff $500 as damages, because there was no evidence of the market value of the carpet material at the time and place of default, and no evidence from which damages could be computed.

■ Ordinarily where a buyer refuses to accept and pay for goods the measure of damages is the difference between the contract price and the market price of the goods on the date of the breach. Wheeler v. Cleveland, 170 Ala. 426, 54 So. 277.

In 46 American Jurisprudence, Sales, Section 626, page 757, it is stated:

"In a case where goods to be manufactured or produced for the buyer are in existence at the time of the buyer's breach by his refusal to accept them, it is important to determine whether the goods manufactured or produced have a general market value. If they have such general market value, the general rule applicable to any other contract of sale governs, the measure of damages being the difference between the contract price and the market price at the time and place of delivery, * * *. This rule, of course, can have no application unless it appears that the seller upon the buyer's breach could have placed the goods manufactured on the market, and, by thus disposing of them, have relieved himself from the consequences of the buyer's default. If the goods are made after a particular pattern or style and are useless or practically useless to anyone except the person for whom they were made, in other words, if the manufacturer cannot dispose of them on the market, he is ordinarily allowed to recover the full contract price, less any salvage value of the article, * *." See also Kinney v. Ehrensperger, 16 Ala.App. 289, 77 So. 439; Bookwalter v. Clark, 11 Biss. 126, 10 F. 793.

■ This case was tried by the court without a jury. The general rule is that in cases where the evidence is ore tenus, or partly so, the judgment of the trial court has the effect of a jury verdict and will not be disturbed on appeal unless palpably wrong and contrary to the great weight of the evidence. Collier v. Woody, 257 Ala. 391, 59 So.2d 670.

■ Under this rule the "findings of the trial court as to the value or amount of damages recoverable are, like the verdict of a jury, entitled to great weight, and, in the absence of an abuse of discretion, ordinarily will not be disturbed by the reviewing court." 5 C.J.S. Appeal and Error § 1659, p. 749; Southern States

Life Insurance Company v. Allan, 38 Ala. App. 467, 87 So.2d 439.

 The issues involved were for the trier of facts under the conflicting evidence, and from the figures submitted there was evidence justifying the conclusion reached by the trial court as to the amount of recovery. After indulging all favorable presumptions to sustain the trial court's conclusion, we cannot say that it was palpably erroneous or manifestly unjust.

Appellee has filed a motion to strike the record and dismiss the appeal because the transcript of the evidence was filed in the lower court more than sixty days before the filing of the record here. Judgment was rendered January 23, 1961. The appeal was taken June 6, 1961. The court reporter filed the transcript of the evidence with the circuit clerk February 24, 1961. The time within which the record must be filed here did not begin to run with the early filing of the transcript of the evidence. Bates v. Rentz, 262 Ala. 681, 81 So.2d 349; Lloyd's of London v. Fidelity Securities Corporation, 39 Ala.App. 596, 105 So.2d 728. The motion is denied.

The judgment is affirmed.

Affirmed.