Thomas R. Roberson and his wife, Emma Roberson, along with Alabama Home Mortgage Company ("AHM"), appeal from a summary judgment in favor of I.L. and Rosa Lee Harris, declaring that the Harrises held fee simple title to a certain parcel of real property.
The complex, though undisputed, facts in this case reveal that on March 1, 1984, the Robersons executed a mortgage to AHM. The mortgage pertained to property located in Jefferson County and secured a $17,165.49 loan made by AHM to the Robersons. On May 31, 1984, the Robersons executed another mortgage on the same parcel of land to the Harrises. The second mortgage, which secured a $12,500.00 loan made by the Harrises to the Robersons, did not disclose the Robersons' prior mortgage to AHM.
In the early part of 1987, the Robersons defaulted on their mortgage to the Harrises; consequently, the Harrises foreclosed *Page 1082 
the mortgage on February 9, 1987. The property was sold pursuant to the terms of a power of sale clause in the mortgage. The Harrises were the highest bidders at the foreclosure sale and were, therefore, the purchasers of the Robersons' interest in the property.
Soon after the Robersons' mortgage to the Harrises was foreclosed, the Robersons defaulted on their mortgage to AHM. As a result, AHM foreclosed on the Robersons' mortgage and purchased the property at an April 6, 1987, foreclosure sale. On May 27, 1987, AHM deeded the property back to the Robersons by way of a quitclaim deed. The Robersons then paid AHM $200 and gave a new mortgage to AHM securing a note for $10,473.00.
On May 16, 1988, the Harrises sent a letter to AHM, demanding a statement of charges from AHM related to its foreclosure of the mortgage given to it by the Robersons. The letter purported to demand the statement of charges in order that the Harrises could effect a redemption of the property at issue. AHM responded to the Harrises' demand with a statement of charges. However, the Harrises disputed the statement submitted by AHM on the basis that it included items that were not properly chargeable. Thereafter, the Harrises sued AHM and the Robersons. In addition to a general prayer for equitable relief, the Harrises asked the trial court to determine the order of the encumbrances on the property, to determine the proper amount that the Harrises must pay in order to redeem the property in question, and to order the defendants to convey the property to the Harrises once the redemption price had been paid.
The Robersons and AHM filed a motion for summary judgment, wherein they alleged that there was no genuine issue of material fact and that they were entitled to a judgment as a matter of law. The trial court, however, denied the motion. Subsequently, the Harrises filed a motion for summary judgment, in which they also alleged that there was no genuine issue of material fact and that they were entitled to a judgment as a matter of law declaring them to be the owners of the property at issue, or, alternatively, declaring them to be entitled to redeem the property from the foreclosure by AHM. The trial court granted the Harrises' motion and entered a judgment declaring them to be the owners of full legal title to the property at issue. The trial court further held that the Harrises held the property free of any claim by either AHM or the Robersons. The Robersons and AHM appealed.
The Robersons and AHM raise two primary issues for our consideration in this appeal. The first issue is whether the trial court erred in entering a summary judgment for the Harrises. The second is whether, by operation of the judgment of the trial court, the Robersons and AHM have been deprived of their interest in the property without due process of law.
We first look to the propriety of the trial court's entry of a summary judgment for the Harrises, bearing in mind the general principle that a second mortgage is subordinate to a first mortgage. See Atlas Subsidiaries, Inc. v. Nixon,47 Ala. App. 103, 251 So.2d 235 (1971). It is undisputed in this case that the Robersons' May 31, 1984, mortgage to the Harrises, was subordinate to the Robersons' March 1, 1984, mortgage to AHM. The execution of the first mortgage operated to convey legal title to the mortgaged property to AHM. SeeLloyd's of London v. Fidelity Sec. Corp., 39 Ala. App. 596,105 So.2d 728 (1958); Moorer v. Tensaw Land Timber Co., 246 Ala. 223, 20 So.2d 105 (1944). Thereafter, the equity of redemption remained in the Robersons as mortgagors. See McDuffie v. Faulk,214 Ala. 221, 107 So. 61 (1926). The equity of redemption is the right of the mortgagor to pay the debt secured by the mortgage, thereby entitling the mortgagor to a reconveyance or defeasance of the title conveyed by the mortgage. § 35-10-26, Ala. Code 1975; Denman v. Payne, 152 Ala. 342, 44 So. 635
(1907).
When a mortgagor executes a second mortgage, the equity of redemption as to the first mortgage is conveyed to the second mortgagee. Atlas Subsidiaries, Inc. v. Nixon, supra. However, the mortgagor *Page 1083 
still retains an equity of redemption right as to the second mortgage. Id. Therefore, in the present case, when the Robersons mortgaged their property to AHM, the Robersons retained an equity of redemption in the property. This equity of redemption, however, was conveyed by the Robersons to the Harrises in the second mortgage. Following the execution of the second mortgage, the Harrises held the equity of redemption as to the mortgage held by AHM, although the Robersons retained such a right with regard to the mortgage to the Harrises.
A valid foreclosure sale of property subject to a mortgage extinguishes the equity of redemption; however, a postforeclosure right of redemption arises in the mortgagor pursuant to § 6-5-230, Ala. Code 1975. Dominex, Inc. v. Key,456 So.2d 1047 (Ala. 1984). The period of redemption is one year from the time that the property is sold at a valid foreclosure sale. § 6-5-230. Unlike the equity of redemption, which exists prior to foreclosure and is deemed an interest in the mortgaged property, the statutory right of redemption arises after foreclosure and is a mere personal privilege conferred by statute; it is not property or a property right. Dominex, Inc.v. Key, supra.
In the instant case, when the Harrises foreclosed on the Robersons' mortgage, the Robersons' equity of redemption in their mortgage to the Harrises was extinguished, but the statute then provided the Robersons a one-year right of redemption with regard to the mortgage that was foreclosed. It is undisputed that the Robersons never attempted to exercise their statutory right to redeem the property from the Harrises' foreclosure. Also, when AHM foreclosed on the Robersons' mortgage, the equity of redemption that the Robersons had conveyed to the Harrises via the second mortgage was extinguished. The Harrises then had a one-year statutory right of redemption with regard to the mortgage that was foreclosed by AHM. We find, however, that under the facts presented in this case, the Harrises were not forced to rely on their statutory right of redemption as their only means of asserting a claim for full legal title to the property in question, because of the applicability of the doctrine of after-acquired title.
AHM became the absolute owner of the property by the merger of the equity of redemption and the legal title following AHM's foreclosure of the Robersons' mortgage. See First Nat'l Bank ofMobile v. Gilbert Imported Hardwoods, Inc., 398 So.2d 258 (Ala. 1981); Barnett Jackson v. McMillan, 176 Ala. 430, 58 So. 400
(1912). After the merger of the legal and equitable titles in AHM, AHM then made an outright conveyance of its interest to the Robersons on May 27, 1987, by way of a quitclaim deed. The effect of this quitclaim deed was to convey to the Robersons all right, title, and interest possessed by AHM at the time of the execution of the deed. See M.C. Dixon Lumber Co. v.Mathison, 289 Ala. 229, 266 So.2d 841 (1972).
The record shows that in their mortgage to the Harrises the Robersons warranted the title to the property that was conveyed by the mortgage. Because of these warranties, any after-acquired interest of the Robersons would pass to the Harrises, as the Robersons are estopped to deny the title of the Harrises. See Lost Creek Coal Mineral Land Co. v. Hendon,215 Ala. 212, 110 So. 308 (1926). Thus, any interest, regardless of its nature, acquired by the Robersons after their execution of the mortgage to the Harrises would inure to the Harrises. See First Nat'l Bank of Lincoln v. Cash, 220 Ala. 319,125 So. 28 (1929); Hunter v. Taylor, 189 Ala. 104,66 So. 671 (1914); 59 C.J.S. Mortgages § 185 (1949). Because AHM had the absolute title to the property in question when it executed the quitclaim deed to the Robersons, AHM conveyed the absolute title to the Robersons in the May 27 quitclaim deed. When the absolute title was transferred to the Robersons, it ipso facto
vested in the Harrises by virtue of the doctrine of after-acquired title.
In this case, if AHM had not executed the quitclaim deed, then the Harrises' only means of obtaining possession of full title *Page 1084 
to the property would have been through the exercise of their statutory right of redemption. Furthermore, if AHM had quitclaimed the property to someone other than the Robersons, the Harrises could have obtained title to the property only by asserting their statutory right of redemption against the party that purchased from AHM. See Garvich v. Associates Fin. Serv.Co., 435 So.2d 30 (Ala. 1983); Hobson v. Robertson, 224 Ala. 49,138 So. 548 (1931). However, because of the applicability of the doctrine of after-acquired title, when the Robersons received full title to the property by way of the quitclaim deed from AHM, title to the property at that point vested in the Harrises. Therefore, under the facts of this case, we conclude that the trial court correctly entered a summary judgment for the Harrises declaring them to be the owners of the full legal title to the property at issue.
The Robersons and AHM's second contention is that the trial court, by declaring the Harrises to hold a fee simple interest in the property in question, deprived the Robersons and AHM of their interest in the property. The Robersons and AHM assert that the trial court's ruling resulted in a taking of their property in contravention of their rights to due process as secured by Article 1, § 35, of the Alabama Constitution (1901), and by the fourteenth amendment to the United States Constitution.
Although the Robersons and AHM do not clearly articulate whether they are claiming a substantive or a procedural deprivation of due process, it appears from their brief that they are claiming a substantive violation. However, after reviewing their assertions, we find no violation of either substantive or procedural due process requirements.
The procedural branch of due process, as it relates to the matters here, primarily requires that a person have notice of a judicial proceeding and an opportunity to be heard in an impartial tribunal. Rotunda, Nowak, Young, Treatise onConstitutional Law, § 17.8 (1986). Here, both AHM and the Robersons answered the Harrises' complaint without raising insufficiency of process or insufficiency of service of process defenses. See Rule 12, A.R.Civ.P. Thereafter, AHM and the Robersons filed motions and other pleadings. They responded to the Harrises' motion for summary judgment by preparing and filing a memorandum setting out their argument. Finally, counsel for the Robersons and AHM appeared and argued at the oral argument on the Harrises' motion for summary judgment. Therefore, we find no violation of the Robersons and AHM's procedural due process rights.
Substantive due process, as it relates to the matters here, primarily protects against oppressive legislation and is in many ways similar to the "taking" clauses of the state and federal constitutions. Rymer v. Douglas County, 764 F.2d 796
(11th Cir. 1985). Basically, substantive due process protections guard against governmental appropriations of property for developmental use or for the use of the general public. See First English Evangelical Lutheran Church v. Countyof Los Angeles, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250
(1987); Loretto v. Teleprompter Manhattan CATV Corp.,458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982).
Substantive due process questions relating to the taking of property generally arise in circumstances wherein a unit of government has overregulated the use of privately owned land or has appropriated such land for the use of the general public, which is clearly not the situation in this case. There is no general public benefit arising from the summary judgment entered by the trial court. Therefore, we find no merit in the Robersons and AHM's argument that their substantive due process rights have been violated.
In consideration of the foregoing, we hold that the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, HOUSTON and KENNEDY, JJ., concur. *Page 1085